Madeline JOHNSON, on her own behalf and on behalf of her minor son, James Johnson, as his next friend, and on behalf of all other minors similarly situated, Plaintiffs,

v.

The CITY OF OPELOUSAS, an Incorporated Municipality, Thomas Edwards, individually and in his official capacity as Mayor of the City of Opelousas, Howard Zerangue, Individually and in his official capacity as Chief of Police.

Civ. A. No. 790317.

United States District Court,
W. D. Louisiana,
Lafayette-Opelousas Division, Section S.

April 16, 1980.

Henry C. Remm, Jr., Acadiana Legal Service Corp., Lafayette, La., for plaintiffs.

Richard B. Millspaugh, Opelousas, La., for defendant.

## OPINION

SHAW, District Judge.

This matter involves an action by a mother and her son to test the constitutionality of the nocturnal juvenile curfew ordinance of the City of Opelousas, Louisiana. The matter was submitted to the Court to be decided on the stipulation of facts in the record. All parties to this cause have the status of natural persons residing within the geographical area encompassed by the Federal Western District of Louisiana.

On January 21, 1978, the plaintiff's minor son, James Johnson, was taken into custody at 4:52 a. m., by an officer employed by the City of Opelousas Police Department for violating the city's juvenile curfew ordinance. Young Johnson was released immediately thereafter without the filing of a formal petition or any adverse adjudication under applicable Louisiana law resulting

from the incident. On August 16, 1978, James Johnson was apprehended at 2:05 a. m. by an officer employed by the City of Opelousas Police Department in connection with his violation of the juvenile curfew ordinance. Subsequently, James Johnson was found to be in violation of the juvenile curfew ordinance in connection with his August 16, 1978, apprehension, breaching the peace or otherwise engaging in unlawful activity. Plaintiff, James Johnson, has been released from La Garconniere, a juvenile residence facility, and now resides with his mother in Opelousas. Louisiana. No appeal from this adjudication was taken.

Plaintiffs contend that James Johnson is threatened with enforcement of the juvenile curfew ordinance against him in the future.

Plaintiff, Madeline Johnson, is a natural person and a citizen of the United States of America, of the age of majority, residing in the City of Opelousas, Louisiana. Pursuant to Rule 17(c), Federal Rules of Civil Procedure, Madeline Johnson seeks to represent the other named plaintiff, James Johnson, a minor, and the putative class of minors of which he is a member.

Plaintiff, James Johnson, a minor, is the son of plaintiff, Madeline Johnson, and he desires to sue by his next friend. Plaintiff, James Johnson, is a natural person and a citizen of the United States of America, and he resides in the City of Opelousas, Louisiana.

Defendant, City of Opelousas, is an incorporated municipality and political subdivision properly created under the laws of the State of Louisiana. Opelousas Code § 18–8.1 was properly adopted and is currently enforced by the City of Opelousas. Defendant, City of Opelousas, is sued in its official capacity, as a person under 42 U.S.C. § 1983.

Defendant, Thomas Edwards, is a natural person, and a citizen of the United States, residing in St. Landry Parish, Louisiana. He is sued individually and in his official capacity as Mayor of the City of Opelousas. As mayor, defendant Edwards, is responsible for the enforcement of Opelousas Code § 18–8.1 complained of herein.

Defendant, Howard Zerangue, is a natural person, and a citizen of the United States, residing in St. Landry Parish, Louisiana. Defendant Zerangue is sued individually and in his official capacity as Chief of Police of the City of Opelousas. As Chief of Police, defendant Zerangue is directly responsible for the enforcement of Opelousas Code § 18–8.1 complained of herein.

Plaintiffs seek to maintain this suit as a class action pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, the class being "all persons who have been or in the future will be arrested or detained under § 18–8.1".

▪ The Court finds as a matter of law that plaintiffs' claim satisfies the prerequisites of Rule 23(a) FRCP and that in addition subdivision (b)(2) would be applicable to the instant action[1]; however, the Court

---

1. FRCP 23(a) requires the existence of the following four conditions before the Court may allow one or more members of a class to sue or be sued as representative parties on behalf of all its members: numerosity, commonality, typicality, and representativeness.

In the matter at hand, the Court finds that it would be impracticable, if not impossible, to join all the members of the juvenile population of Opelousas, and other potential ordinance violators. The Court is aware that the class in question is incapable of specific enumeration; however, the complaint filed by plaintiffs, seeking to represent the class of similarly situated youth, is not peculiar to the named plaintiffs, but exists for the hundreds of other members of the class. There is no need to state the exact number and identity of every class member; to require plaintiffs to do so would place a crippling burden upon plaintiffs and frustrate the purpose of class actions.

In order to satisfy the commonality requisite of 23(a)(2), the Court need only conclude that there are common questions of law or fact among the putative class members. In the instant case, all members of the class are threatened with enforcement of the same ordinance or with the same course of conduct, by the same individuals. Thus, the Court finds that the commonality requisite of 23(a)(2) is satisfied.

"Typicality" is also satisfied in the instant action since the claims of the representative parties are typical of those of the class. In *Gonzales v. Cassidy*, 474 F.2d 67, the Fifth

in its discretion has determined that a class action is unnecessary to insure an appropriate examination of the constitutionality of the ordinance in question. Any declaratory or injunctive relief given in the individual action of the named plaintiffs would inure to the benefit of other similarly situated minors. Cf. *Koehler v. Ogilvie*, 53 F.R.D. 98, at page 101 (N.D.Ill.1971), Judgment Affirmed, 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777.

After due consideration of the criteria listed in Rule 23 and the facts of the matter at hand, the Court chooses to exercise its discretion in denying class status in this suit.

No hearing on the maintenance of this suit as a class action will be granted for the obvious reason that no additional evidence could be available or pertinent to the question as to whether or not a class action is necessary or appropriate.

In general, plaintiffs claim that the ordinance violates the First, Fifth and Fourteenth Amendments of the Constitution of the United States, in that it is vague and overbroad on its face; that it violates the minor plaintiff's right of freedom of speech, freedom of association, freedom of assembly and freedom of religion, guaranteed by the First Amendment to the Constitution of the United States; that it violates the minor's right to move freely and to use the public streets in a way that does not interfere with the personal liberties of others guaranteed by the Ninth and Fourteenth Amendments to the Constitution of the United States; that it violates the rights of parents to direct the upbringing of their children; and the guarantee of family autonomy implicit in the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States; that it violates the minor plaintiff's rights of foreign interstate and intrastate travel guaranteed by the commerce clause and the privileges and immunities clause of the Fourteenth Amendment and Article 4, Section 2 of the Constitution of the United States, and that it violates the minor plaintiff's rights guaranteed by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Opelousas Code Section 18–8.1 provides as follows:

"(a) It shall be unlawful for any unemancipated minor under the age of seventeen (17) years to travel, loiter, wander, stroll, or play in or upon or traverse any public streets, highways, roads, alleys, parks, places of amusements and entertainment, places and buildings, vacant lots or other unsupervised places in the City of Opelousas, Louisiana, between the hours of 11:00 p. m. on any Sunday, Monday, Tuesday, Wednesday or

Circuit formulated a test for determining whether 23(a)(3) is satisfied: that the claims or defenses spring from a common event or transaction *or* the claims or defenses of the class proceed on a common factual or legal theory. The Court finds that the representatives and the unnamed members of the would-be class are tied together by similar factual and legal theories; thus, their interests are coextensive with the class which they seek to represent. Plaintiff herein is threatened with prosecution upon a subsequent violation of the ordinance; thus, the interests of the named plaintiffs and the putative class members are congruent.

The final requirement of 23(a) is that the representative parties fairly and adequately protect the interests of the class. The Court finds that the named plaintiffs have a substantial stake in the outcome of this lawsuit, and have the means to prosecute this case; and that their interests are not antagonistic to those of the unnamed class members. Therefore, the positions taken by the named plaintiffs can safely be taken as a statement of the position taken by the class as a whole. A second element of the representativeness requisite is that in addition to the named plaintiff fairly and adequately representing the class, the attorney for the class must have the experience and resources for handling this type litigation. After due consideration of the resources, professional experience and support personnel accessible to Mr. Remm (counsel for plaintiffs), the Court finds that the representativeness requirement of 23(a)(4) is satisfied.

As mentioned above, in addition to meeting all four (4) requisites of 23(a), the Court finds that this action would qualify under subsection 23(b)(2). Rule 23; *Huff v. N. D. Cass Co.*, 485 F.2d 710 (5th Cir.). The defendants in this matter acted on grounds generally applicable to the class; however, the requested relief will benefit not only the claimants but all other persons subject to the ordinance in question.

Thursday night and 4:00 a. m. of the following day, or 1:00 a. m. on any Friday or Saturday night and 4:00 a. m. of the following day, all official time of the City of Opelousas, Louisiana, unless the said minor is accompanied by his parents, tutor or other responsible adult or unless the said minor is upon an emergency errand.

(b) Any minor violating any of the provisions of this section shall be deemed a

**2.** The text of Louisiana Revised Statutes, Title 13, Sections 1569 and 1570 is as follows:

*Section 1569:*

"When used in R.S. 13:1561 through 13:1592, unless the context otherwise requires:

(1) 'The Court' means

a.  The juvenile court, or

b.  A family court when exercising jurisdiction in the proceedings embraced within this chapter.

(2) 'The judge' means

a.  The judge of the juvenile court without distinction between district judges or city court judges serving as such and exclusive juvenile court judges, or

b.  A family court judge when acting in proceedings embraced within this chapter.

(3) 'Child' means a person less than seventeen years of age, and no exception shall be made for a child who may be emancipated by marriage or otherwise.

(4) 'Adult' means a person seventeen years of age or older.

(5) 'Custody' means the control of the actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child and all other rights and responsibilities of a parent toward his child except those pertaining to property. 'Custody,' as herein defined, *relates to those rights and responsibilities as* exercised either by child's parent or parents or by a person or organization granted custody by a court of competent jurisdiction. It shall not exist by virtue of mere physical possession of a child.

(6) 'Detention' means the holding of a child *during the period in which he is awaiting a* hearing of his case.

(7) The singular includes the plural, the plural the singular, and the masculine the feminine, when consistent with the intent of R.S. 13:1561 through 13:1592.

(8) A 'neglected child' means a child who has been adjudged *to be within the conditions set* forth in R.S. 13:1570, Sub-section 1, paragraphs (1) and (2).

(9) A 'delinquent child' means a child who has been adjudged to be within the conditions set forth in R.S. 13:1570, Sub-section A, paragraphs (3), (4), and (5).

neglected child, as such term is defined in Louisiana Revised Statutes, Title 13, Sections 1569 and 1570 as now enacted or hereafter amended or re-enacted, and such minor and his parents, tutor or other adult having the care and custody of such minor shall be dealt with under proper procedure in any juvenile court having jurisdiction of such child. (Ord. No. 3, §§ 1, 2, 6–14–72)" [2]

(10) 'Probation' is that legal status created by judicial act as a discipline designed to reform and readjust an individual offender through case work services applied outside an institution.

(11) 'Probation Officer' is a duly appointed representative of the court trained or experienced in performing case work services, whose duty is to investigate, supervise and generally represent the interests of the offender in his relations to the court and the community while in such probation status. As substituted Acts 1950, No. 82, § 2, as amended Acts 1956, No. 104, § 1; Acts 1956, No. 108, § 1; Acts 1956, No. 109, § 1; Acts 1956, No. 110, § 1."

*Section 1570:*

"Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:

A.  Concerning any child whose domicile is within the parish or who is found within the parish:

(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; or who is abandoned by his parent or other custodian; or who is otherwise without proper care, custody, or support.

(2) Whose occupation, behavior, environment or associations are injurious to his welfare.

(3) Who absents himself from home or usual place of abode without the consent of his parent or other custodian or who is habitually disobedient or beyond the control of his parent or other custodian.

(4) Who, being required by law to attend school, willfully violates rules thereof or absents himself therefrom.

(5) Who violates any law or ordinance, except a child charged with having committed a capital crime or a crime defined by any law defining attempted aggravated rape after having become fifteen years of age. However, the court shall have exclusive original jurisdiction concerning any child who violates any law or ordinance except a child fifteen years of age or older charged with a capital crime or assault with intent to commit aggravated rape.

To this Court's knowledge, this is the second federal case to adjudicate the constitutionality of a nocturnal juvenile curfew ordinance. The first case on the subject was *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242 (1975); affirmed 535 F.2d 1245 (3rd Cir.); certiorari denied 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976). The lengthy and well-reasoned opinion of Chief Judge Sheridan in the Middletown case has been of great assistance to this Court, and before referring to it, certain leading constitutional decisions applicable to the case at hand should be mentioned.

There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth (than when it involves regulatory legislation affecting ordinary commerce transactions). *United States v. Carolene Products Company*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234, Footnote 4 (1938).

The Court, in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) sustaining Massachusetts' compulsory vaccination statute, stated:

"But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members.

.     .     .     .     .

"If there is any such power in the judiciary to review legislative action in

B. Concerning any minor seventeen years of age or older whose domicile is within the parish or who is found within the parish charged with having violated any law or ordinance prior to having become seventeen years of age, except a minor seventeen years of age or older charged with having committed a capital crime or a crime defined by any law defining aggravated rape after having become fifteen years of age.

C. To award the custody of a child domiciled within the parish or who is actually in the parish to an agency, institution or individual when the parent or other person having custody or care of the child wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.

D. For the adoption of a child under seventeen years of age, by observing the procedure prescribed by existing laws.

E. For the commitment of a mentally defective or mentally disordered child in accordance with the provisions of law for commitment of such persons. If it shall appear that any child concerning whom a petition has been filed is mentally defective or mentally disordered, the court, before committing him to an institution, may cause such child to be examined by a qualified psychiatrist, physician, or psychologist. On the written statement of such psychiatrist or physician that such child is mentally disordered, or on the written statement of such psychologist that such child is mentally defective, or at the discretion of the court, the court may, by observing the procedure prescribed by existing laws commit such child to an appropriate institution authorized by law to receive and care for such children. The parent, tutor or person having the care of such child shall be given due notice of any proceedings hereunder.

F. Concerning any adult whose domicile is within the parish or who is found within the parish who is charged with the violation of any law now in existence or hereafter enacted for the protection of the physical, moral or mental well-being of children under seventeen years of age, not punishable by death or hard labor. Said court shall also have jurisdiction of all cases of desertion or nonsupport of children by either parent, or nonsupport of a wife by her husband.

It is hereby declared to be the policy of this state that a child who commits any act, or such conditions otherwise exist to bring him within the provisions hereof, should be presented to, and his case heard in, the court of his domicile regardless of the parish in which such act is committed or such other conditions exist. Provided, however, that this shall not be construed as to deprive the court of any parish of jurisdiction in any of the cases mentioned in this section, if the child, or his parent or custodian, is at the time such act is committed or other conditions exist, present within the parish, should the judge of said court in his discretion see fit to exercise such jurisdiction.

Nothing contained in R.S. 13:1561 through 13:1592 shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus, or to determine the custody of children when such custody is incidental to the determination of cases pending in such other courts. As substituted Acts 1950, No. 82, § 2."

respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution . . ."

The Oregon Compulsory Education Act requiring every child between the ages of eight and sixteen should attend a public school and that parents or guardians, who refused should be guilty of a misdemeanor, was held unconstitutional as an unreasonable interference with the liberty of parents and guardians to direct the upbringing and education of children under their control. Mr. Justice McReynolds delivering the opinion of the Court said:

"The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)."

But the ordinance in question does not involve an absolute prohibition of a minor's right of movement or travel or access to a place for the exchange of ideas consistent with the safe and legitimate use of the streets. These freedoms are not beyond all control.

*Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), sustained a state child labor law prohibiting selling by children on the public streets, as applied to a child of nine, aiding her guardian distribute religious material. The authority of the state as *parens patriae*, ". . . is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." Conceding that a similar statute would be invalid if applied to adults, the Court stated that the State's authority over children's activities is broader and that

this is particularly true of public activities and matters of employment.

In *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396 (1941), the Court sustained a conviction for a violation of a state statute prohibiting a "parade or procession" upon a public street without a license. It was contended by defendants that the procession was a form of worship for them. Chief Justice Hughes, as organ for the Court, stated:

"The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. . . . As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the *communication of thought and the discussion of public questions immemorially associated with resort to public places.*"

There is no absolute freedom to do as one wills. The physical well-being of our children is an object of public interest and care in order to preserve the strength and vigor of our people. Children are in a class of their own. If legislation designed for the protection of women has been sustained by our Courts where like legislation for men could not, the same principles can apply for children. This Court feels that the infringement of the individual rights of parent and child involved herein is warranted by the pressing nature of the social need the ordinance was established to promote. What can be closer to the public interest than the health and protection of children from whatever awaits them during the late hours of night and the wee hours of morning? The Supreme Court has frequently held that the legislative authority acting within its proper field is not bound to extend to regulation to all cases which it

might properly reach. It may confine its attention to those classes of cases where the need is determined to be clearest.

"If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.'" *West Coast Hotel Company v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

The well-being of its children is of course, a subject within the State's constitutional power to regulate. The custody, care and nurture of children reside first in the parents and they are entitled to the support of laws designated to aid discharge of that responsibility. *Ginsberg v. New York*, 390 U.S. 629, at 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). If the state can regulate the hours of work by children, it can certainly regulate their hours of play.

■ For the foregoing reasons, the Court finds that the plaintiff's First Amendment rights, protected by the due process clause of the Fourteenth Amendment from impairment by the states, have not been violated. For the same reasons, the Court holds that the plaintiff's claim that the ordinance violates the minor plaintiff's right to move freely and use the public streets has no merit.

■ The plaintiffs claim that the curfew ordinance unconstitutionally interferes with the right of parents to direct the upbringing of their children and the guarantee of family autonomy is without merit. The right of the parent to direct the upbringing of his children and the right to family autonomy are not absolute. When actions concerning the child have a relation to the public welfare or the well-being of the child, the state may act to promote these legitimate interests. *Bykofsky v. Borough of Middletown*, supra, at page 1262.

The plaintiffs assert that the curfew ordinance violates the minor plaintiff's right of foreign, interstate and intrastate travel, guaranteed by the commerce clause and the privileges and immunities clause of the Fourteenth Amendment, and Article 4, Section 2 of the Constitution of the United States.

■ The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community; *Kovacs v. Cooper*, 336 U.S. 77, 83, 69 S.Ct. 448, 93 L.Ed. 513 (1949), and when there is a reasonable basis for legislation to protect the social, as distinguished from the economic, welfare of a community, it is not for the Courts because of the commerce clause, to deny the exercise locally of the sovereign power of the state. *United States v. Carolene Products Co.*, supra.

■ For the reasons set forth previously herein, and for the reasons set forth in *Bykofsky v. Borough of Middletown*, supra, the Court holds that the ordinance does not constitutionally impinge on the minor's right of foreign, interstate and intrastate travel guaranteed by the commerce clause or the privileges and immunities clause.

■ The plaintiffs contend that the curfew ordinance violates the equal protection clause of the Fourteenth Amendment. The traditional test requires that the state action must be upheld if there is a reasonable basis for the classification and the basis is rationally related to the achievement of a legitimate state interest. *Bykofsky v. Borough of Middletown*, supra, at page 1264, and cases cited therein. Unlike a classification based upon race, alienage and natural origin which are inherently suspect, age is not a suspect classification. *Oregon v. Mitchell*, 1970, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed. 272.

"Under traditional rational basis equal protection analysis, a legislative classification must be sustained unless it is patently arbitrary or bears no rational relationship to a legitimate governmental interest. * * *" *Bykofsky v. Borough of Middletown*, supra.

■ Since the ordinance applies alike to all persons under the age of seventeen (17), there is clearly no equal protection violation within the class subject to the curfew.

The final claim by the plaintiffs is that the ordinance is vague, and overbroad on its face, to-wit: it provides no standards by which the conduct which it seeks to prohibit can be tested; and the language encourages arbitrary, capricious and erratic enforcement. In *Middletown*, supra, the Court stated at page 1253:

" \* \* \* Indeed the precision seemingly demanded by plaintiffs with respect to this curfew ordinance would, if deemed constitutionally required, make it next to impossible to draft any curfew ordinance, or for that matter, *any* criminal statute. It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.' *American Communications Assn. v. Douds*, 1950, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925. \* \* \* "

\* \* \* \* \* \*

" \* \* \* In short, laws expressed in words of general applicability ultimately must be applied to specific factual circumstances. Thus, while there must be definiteness and ascertainable standards so that men of common intelligence can apprehend the meaning of the ordinance, perfect precision is neither possible nor constitutionally required. 'Condemned to the use of words, we can never expect mathematical certainty from our language.' *Graynod v. City of Rockford*, 408 U.S. [104] at 110, 92 S.Ct. [2294] at 2300 [33 L.Ed.2d 222]."

Legislation must not be so vague, the language so loose, as to leave to those who have to apply it too wide a discretion. Legislation which is ambiguous, imprecise and vague, ". . . does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat". *Shuttlesworth v. City of Birmingham*, 1965, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176.

Herein, plaintiffs claim that the ordinance is vague since the term "emergency errand" places unfiltered discretion in the hands of the Opelousas police. The requirement of definiteness has been held satisfied by a statute which forbade work by railroad employees in excess of prescribed maximum hours per day "except in case of emergency", the latter phrase being characterized by the Court as "an appropriate description of an exceptional class." *Baltimore & Ohio Ry. Co. v. Interstate Commerce Commission*, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878 (1911).

Within the same reasoning the Court finds that the term "responsible adult" is not impermissibly vague. The term "a sufficient degree of maturity" was held impermissibly vague in *Middletown*, supra, when used as a standard for relaxing the curfew. However, without the term "responsible" preceding the word "adult", the ordinance herein would lose a great deal of its desired effect. There is no doubt that many irresponsible and undesirable adult companions could be found to roam the streets during the curfew hours.

There is another question regarding the curfew ordinance that was not raised but should be considered by the Court. Paragraph B of Section 18–8.1 provides in part that:

"Any minor violating any of the provisions of this section shall be deemed a neglected child, as such term is defined in Louisiana Revised Statutes, Title 13, Sections 1569 and 1570, as now enacted or hereinafter amended or re-enacted, . . ."

The choice of the term "neglected child" is unfortunate and misleading because a child may be a curfew violator and not, under any stretch of the imagination, be neglected by his parents. Therefore, if Paragraph (b) of Section 18-8.1 is unconstitutional, the Court feels that paragraph (a) can stand alone, undisturbed and valid if the requirements of procedural due process are otherwise satisfied. In such a case, the provisions of the Louisiana Code of Juvenile Procedure (LSA–C.J.P. Articles 1–128) would automatically come into play. With enactment of this new juvenile code effec-

tive on January 1, 1979, most of the provisions of LSA–R.S. 13:1569 and 13:1570 are now contained in LSA–C.J.P., Articles 13, 15, 45, 53, 70, 84 and 85.[3]

3. The text of LSA‑C.J.P. Articles 13, 15, 45, 53, 70, 84 and 85 is as follows:

*LSA C.J.P. Article 13:*

"Except where the context clearly indicated otherwise, as used in this Code:

(1) 'Court' means any city, parish, district, juvenile or family court, or its judge, when exercising juvenile jurisdiction as provided for in this Code. It does not include a mayor's court or a justice of the peace.

(2) 'Judge' means the judge of a court exercising juvenile jurisdiction.

(3) 'Offense' includes both felony and misdemeanor.

(4) 'Capital offense' means an offense that may be punished by death.

(5) 'Felony' means an offense that may be punished by death or by imprisonment at hard labor.

(6) 'Misdemeanor' means any offense other than a felony, and includes the violation of an ordinance providing a penal sanction.

(7) 'Delinquent act' means an act committed by a person less than seventeen years of age, and designated an offense under the statutes or ordinances of this state, or of another state if the act occurred in another state, or under federal law. It also includes a direct contempt of any court committed by a child and a constructive contempt of court committed by an adjudicated child who repeatedly disobeys the court's judgment of disposition. A child adjudicated a delinquent for a constructive contempt of court shall not be considered to have been adjudicated a delinquent upon termination of the judgment of disposition for contempt. It does not include a traffic violation or an offense applicable only to children.

(8) 'Traffic violation' means any violation of a statute or ordinance regulating traffic, except driving offenses defined in the Criminal Code found in Chapter 1 of Title 14 of the Revised Statutes.

(9) 'Child' means a person who has not attained seventeen years of age.

(a) In delinquency proceedings, the term 'child' also means a person who has not attained twenty-one years of age who committed a delinquent act before attaining seventeen years of age.

(b) For the purposes of proceedings under R.S. 14:403 relative to abused and neglected children and for the purpose of proceedings in which children are alleged to be in need of care, the term 'child' shall include persons who have not attained eighteen years of age.

(10) 'Adult' means a person seventeen years of age or older, except as otherwise provided by law.

(11) 'Parent' means either parent if they are married and living together. If one parent is dead, or if the parents are divorced, legally separated, separated in fact, or unmarried, it means a parent or person having legal or actual custody of the child. If no parent has legal or actual custody, it means the person, institution, agency, or association of persons having legal or actual custody.

(12) 'Delinquent child' means a child who has committed a delinquent act.

(13) 'Child in need of supervision' means a child who needs care or rehabilitation because:

(a) Being subject to compulsory school attendance, he is habitually truant from school or willfully violates the rules of the school;

(b) He habitually disobeys the reasonable and lawful demands of his parents, and is ungovernable and beyond their control;

(c) He absents himself from his home or usual place of abode without the consent of his parent;

(d) He purposefully, intentionally and willfully deceives, or misrepresents the true facts to, any person holding a retail dealer's permit, or his agent, associate, employee or representative, for the purposes of buying or receiving alcoholic beverages or beer, or visiting or loitering in or about any place where such beverages are the principal commodities sold or handled;

(e) His occupation, conduct, environment or associations are injurious to his welfare; or

(f) He has committed an offense applicable only to children.

(14) 'Child in need of care' means a child:

(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child;

(b) Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, counseling or education, or as a result of the parent's neglect or imposition of cruel punishment; or

(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason.

(15) 'Act' includes a failure or omission to perform a legal duty.

(16) 'Juvenile detention center' is a facility providing care for children under circumstances which are physically restricting.

(17) 'Juvenile proceeding' or 'juvenile case' means a proceeding or case where the court is exercising juvenile jurisdiction.

(18) 'Probation officer' is a representative of the agency providing supervision services to a court exercising juvenile jurisdiction. It also includes any person designated by the court to serve as the court's probation officer.

However, the Opelousas Code Section 1–5.1 contains a severability clause of which the Court can take judicial notice. It provides:

"It is hereby declared to be the intention of the mayor and board of aldermen that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of a court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code."

(19) 'Shelter care facility' is a physically-unrestricting facility providing temporary care for children.

(20) 'State' includes a city or other political subdivision of the state.

(21) 'Statute' or 'law' means a statute, a constitutional provision, or an ordinance of a city or other political subdivision of the state."

*LSA C.J.P. Article 15:*

"Except as otherwise provided herein, a court exercising juvenile jurisdiction shall have exclusive original jurisdiction over the following proceedings:

A. A proceeding in which a child is alleged to be a delinquent child; except that the offender is subject to criminal prosecution and liability as an adult in:

(1) Cases where criminal prosecution and liability as an adult are provided by law; and

(2) Cases which have been transferred, pursuant to procedures in R.S. 13:1571.1 through 1571.4, to a court exercising criminal jurisdiction.

B. A proceeding in which a child is alleged to be in need of supervision.

C. A proceeding in which a child is alleged to be in need of care.

The court shall have such other juvenile jurisdiction over children as may be provided by law, including proceedings under R.S. 14:403."

*LSA C.J.P. Article 45:*

"A proceeding under Article 15 shall be commenced by petition.

The district attorney may file a petition without leave of court.

Any person authorized by the court may file a petition if there are reasonable grounds to believe that the child is a delinquent child, a child in need of supervision, or a child in need of care."

*LSA C.J.P. Article 53:*

"A. Except as provided in Paragraphs B, C, and D, a child shall be ordered to appear to answer the petition within fifteen days after the filing of the petition. For good cause, the court may extend such period.

B. A child continued in custody shall be ordered to appear to answer a petition within five days after the filing of the petition if the petition requests that the child be adjudicated a delinquent or in need of supervision. For good cause, the court may extend such period.

C. If the petition only alleges that a child is in need of care, the court may permit the child to answer through counsel. In such case, the court shall order counsel to answer within fifteen days after the filing of the petition without requiring the presence of the child. Such period may be extended for good cause.

D. If the petition is filed prior to or during the hearing to determine continued custody, the court may order the child to answer the petition upon completion of the hearing."

*LSA–C.J.P. Article 70:*

"The child and his parents may introduce evidence, call witnesses, be heard on their own behalf, and cross-examine witnesses called by the state."

*LSA–C.J.P. Article 84:*

"A. In a case in which a child has been adjudicated to be in need of supervision, the court may:

(1) Place the child in the custody of a parent or other suitable person on such terms and conditions as deemed in the best interest of the child and the public;

(2) Place the child on probation on such terms and conditions as deemed in the best interest of the child and the public;

(3) Assign the child to the custody of a private or public institution or agency;

(4) Commit a child found to be mentally defective to a public or private mental institution or an institution for the mentally defective: or

(5) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.

B. A child in need of supervision shall not be committed to the Department of Corrections."

*LSA-C.J.P. Article 85:*

"A. In a case in which a child has been adjudicated to be in need of care, the court may:

(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child;

(2) Place the child in the custody of a private or public institution or agency;

(3) Commit a child found to be mentally defective to a public or private mental institution or institution for the mentally defective; or

(4) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.

B. A child in need of care shall not be committed to the Department of Corrections."

Therefore, the Court finds that that portion of Section 18–8.1, Paragraph (b) which provides:

".  .  . shall be deemed a neglected child, as such term is defined in Louisiana Revised Statutes, Title 13, Sections 1569 and 1570, as now enacted or hereinafter amended or re-enacted, and such a minor and his parents, tutor or other adult having the care and custody of such minor .  .  ."

is unconstitutionally vague and misleading. With the deletion from the ordinance of the above words and phrases found impermissibly vague, Section 18–8.1(b) remains as follows:

"(b) Any minor violating any of the provisions of this section shall be dealt with under proper procedure in any juvenile court having jurisdiction of such child."

The United States Supreme Court has held that the Fourteenth Amendment guarantee against deprivation of liberty without due process of law is applicable to children in juvenile delinquency proceedings. *In Re: Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court is of the opinion that the procedures outlined in the Louisiana Code of Juvenile Procedure afford an ordinance violator due process of law.[4]

Therefore, the Court is of the opinion that a violator of the Opelousas curfew ordinance is only subject to the sanctions of the juvenile court when after an evidentiary hearing, the violator is found to be a child in need of supervision or care.[5]

Any other interpretation of the ordinance by this Court would raise a serious question as to its constitutionality and the Court will not invalidate an ordinance if the exact meaning of the phrase can be discovered and a definite standard can be found which would not give rise to arbitrary power. When a word or phrase in a statute or constitution is ambiguous, it is the duty of the Court, in constructing the meaning of that word or phrase, to attempt to determine whether an exact meaning was intended and if so, to ascertain that meaning. *Davis v. Schnell*, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093 (1949), reported at 81 F.Supp. 872 (D.C.).

When the validity of an ordinance is drawn into question, and even if a serious doubt of the constitutionality is raised, it is a cardinal principle that the Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided. *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

Thus, the Court finds that the Louisiana Code of Juvenile Procedure clearly and adequately provides for procedures and sanction for juveniles who violate the curfew ordinance. With the deletion from the ordinance of the words and phrases found impermissibly vague, the Court finds that the ordinance, in conjunction with the Code, gives fair notice of what constitutes a violation of its terms and the applicable sanctions.

The government has an interest to protect young children from each other and from other persons on the street during nighttime hours, the enforcement of parental control of a responsibility for their children, the protection of the public from nocturnal mischief by minors and reduction in the incidence of juvenile criminal activity.

---

4. For instance, under the code, a minor who violates a city ordinance is subject to the exclusive jurisdiction of the juvenile court (LSA–C.J.P. Article 15). Any proceedings shall be commenced by a petition if there are reasonable grounds to believe that a child is in need of supervision or care (LSA–C.J.P. Article 45), and the child and his parents may, along with other procedural guarantees, introduce evidence, call witnesses, be heard on their own behalf and cross examine witnesses called by the State, LSA–C.J.P. Article 70. If the child is adjudicated to be in need of care or supervision, the juvenile court may make a disposition of the case as specifically provided in LSA–C.J.P. Articles 84 and 85.

5. This position is supported by Louisiana law. *State v. Robinson*, 353 So.2d 442 (La.App. 1977), *State, In Interest of Thompson*, 372 So.2d 1255 (La.App.1979), *State v. Schexnaydre*, 215 So.2d 370 (La.App.1968).

The Court must decide whether the curfew actually advances these governmental interests, or to put it another way, does the ordinance have any real or substantial relation to the object sought to be achieved. No testimony was introduced by the City of Opelousas. In Answers to Interrogatories, the Chief of Police does *not* contend that there has been a decrease in crime commission with respect to juveniles during curfew hours, under the curfew ordinance, since its adoption, nor does he contend that the daily time of highest crime commission for juveniles in the City of Opelousas, was during curfew hours since the adoption of the curfew ordinance. There is no testimony from expert witnesses or as a matter of fact, any witnesses. Thus, there is no evidence in the record that the curfew ordinance makes a substantial contribution to the alleviation of nocturnal juvenile criminal activity in Opelousas, Louisiana.

The ordinance must have a useful or legitimate purpose to protect the general welfare or health, safety or morals. It must hit the evil where it is most felt. Unless this Court can take judicial notice of certain facts which are lacking in the record, the ordinance may be repugnant to the due process clause of the Fourteenth Amendment.

The Court feels that it can take judicial notice of the following facts set forth in *Middletown* that are equally applicable to Opelousas.

"*  *  * The court can take judicial notice of the rapidly increasing crime rate among juveniles and that teenagers commit a high percentage of all serious crime. *  *  * The court, however, notes that as a practical matter the effectiveness of a curfew in achieving this objective is impossible to ascertain with scientific certainty. However, even in the absence of any statistical data, it is apparent that some juvenile crime is prevented, such as the 'spur-of-the-moment' nocturnal crime and mischief resulting from group or gang action, because accumulations of juveniles are easily detected and can be dispersed under the curfew.

Moreover, the underlying assumption that likelihood of criminal activity decreases as the amount of control exercised by parents over the activities of their children increases is not an unreasonable tenet. The greater the breakdown in the social structure of the family unit or the greater the parental neglect, then the greater the chance of anti-social behavior by the minor. Thus, to the extent the curfew induces parents, under the pain of imposition of a criminal penalty, to exercise their control where they otherwise might allow their children freer rein and ignore their nighttime whereabouts and activities, it is effective in decreasing nocturnal juvenile crime and mischief and in strengthening the family unit." *Bykofsky v. Borough of Middletown*, at page 1255.

Therefore, the Court finds that the curfew ordinance has a real, rational and substantial relationship to the object sought to be achieved, and the ordinance will be upheld as constitutional.

The plaintiffs' request for injunctive relief, costs of court and attorney's fees is denied.