(No. 48054.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CYNTHIA L. CHAMBERS *et al.*, Appellees.

*Opinion filed Nov. 15, 1976.—Rehearing denied Jan. 28, 1977.*

GOLDENHERSH. J., and WARD, C.J., dissenting.

William J. Scott, Attorney General, of Springfield, and Peter Woods, State's Attorney, of Oregon (James B. Zagel, Jayne A. Carr, and Anne Taylor, Assistant Attorneys General, of counsel), for the People.

Steven Helfer, of Oregon, for appellees.

John Thomas Moran and Lois Lipton Kraft, both of Chicago, for *amicus curiae* Illinois Public Defender Association.

Mark K. Schoenfield, of Northwestern Legal Assistance Clinic, of Chicago (Alex Rering (law student), of counsel), for *amicus curiae* Youth Network Council, Inc.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Ogle County found the defendants, Cynthia and Patricia Chambers, guilty of violating section 1 of "An Act relating to a curfew for certain children" (Ill. Rev. Stat. 1973, ch. 23, par. 2371), and a fine of $10 and costs were imposed on each defendant. On their appeal the Appellate Court for the Second District, one judge dissenting, reversed the conviction on the ground that the statute is unconstitutional. (32 Ill. App. 3d 444.) We granted the State's petition for leave to appeal.

In 1973, when this offense was committed, section 1 of the statute provided:

"(a) It is unlawful for a person less than 18 years of age to be present at or upon any public assembly, building, place, street or highway at the following times unless accompanied and supervised by a parent, legal guardian or other responsible companion at least 21 years of age approved by a parent or legal guardian or unless engaged in a business or occupation which the laws of this State authorize a person less than 18 years of age to perform:

1. Between 12:01 a.m. and 6:00 a.m. Saturday;

2. Between 12:01 a.m. and 6:00 a.m. Sunday; and

3. Between 11:00 p.m. on Sunday to Thursday, inclusive, and 6:00 a.m. on the following day.

(b) It is unlawful for a parent, legal guardian or other person to knowingly permit a person in his custody or control to violate subparagraph (a) of this Section.

(c) A person convicted of a violation of any provision of this Section shall be guilty of a petty offense and shall be fined not less than $10 nor more than $100."

In 1975 the Act was amended by substituting "17" for "18" and "18" for "21". Ill. Rev. Stat. 1975, ch. 23, par. 2371.

The facts are summarized in the opinion of the appellate court (32 Ill. App. 3d 444):

"*** In the early morning hours of March 25, 1973, Cynthia Chambers, 17 years of age, her sister, Patricia Chambers, 15 years of age, and a friend who is not involved in this appeal were in a car driven by Cynthia in the rural area of Ogle County. At approximately 1 a.m. their car was parked on a one-lane bridge with its lights out. An Ogle County deputy sheriff saw the darkened vehicle as he drove by on patrol. As he approached the bridge, the car's lights came on and it proceeded across the bridge. When the deputy followed her car, Cynthia stopped and got out to speak to him. After several questions he determined that the girls were of 'curfew age' and that no adult accompanied them. He arrested them both for curfew violation."

Basically, the defendants and the *amici curiae* contend that the statute unconstitutionally restricts the rights of minors to move about and to exercise their first amendment rights of freedom of speech, assembly and association. They also argue that the statute is invalid since there is no governmental interest which justifies the broad prohibition of the statute, and they urge that the statute contains an inherent potential for arbitrary enforcement. While it is by no means clear that these defendants have standing to raise all of these constitutional issues (see *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908; *People v. Raby* (1968), 40 Ill. 2d 392, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867), the State has not raised that question, and we have decided to consider the merits of the contentions that have been raised.

In holding the statute invalid, the appellate court said:

"*** The right of individuals to move about in public, whenever they choose to do so, is of the utmost importance. This right involves not so much the freedom to travel to a certain place (which was held protected by the United States Constitution in *Aptheker v. Secretary of State,* 378 U.S. 500 (1964), and *Kent v. Dulles,* 357 U.S. 116 (1958)) as it does the freedom to enter into an invaluable social relationship. When a person walks out into public he removes the barriers that inhibit ready association and communication by him and his fellow citizens. Only when he is in public may he enjoy the most meaningful exercise of his freedom of speech, his freedom of association, his freedom peaceably to assemble with others, and his freedom of religion. These are freedoms secured by the first amendment to the United States Constitution and by article I of the Constitution of Illinois, 1970. In order to safeguard them, the right of an individual

to go into public, to travel in public places, at any hour of any day, must also be considered as protected by the first amendment. ***
***

The importance of the right to move about in public has been discussed. That it is a right possessed by juveniles equally with adults has been asserted. And other specific constitutional guarantees necessarily affected by the enforcement of a curfew have been noted. However, it is not necessary to point out with particularity constitutional infirmities inherent in a curfew statute such as the one here at issue. Suffice it to say that the overall attitude of our constitutions and our democratic society mandate freedom and notions of liberty which our legislature may not override. Something more than police convenience or a mere hope that juveniles or society will be benefited by a curfew should be necessary to justify a statewide curfew law for juveniles." 32 Ill. App. 3d 444, 448-49.

We do not find the problem presented by this case so simple as these broadly stated arguments and positions would suggest. In evaluating them it is essential to keep in mind exactly what is involved. The statute is concerned with the conduct of children under the age of 18, and it affects their conduct only between the specified hours, and then only if they are not accompanied by an adult. The exception for minors engaged in a business or occupation necessarily includes getting to and from the job.

The statute is not aimed at any of the fundamental values of speech, association or expression protected by the first amendment, and indeed the suggestion that those values are impaired by the restriction here involved seems to trivialize them. Insofar as the right to travel is concerned, the restrictions of the present statute are

hardly comparable to those involved in *Kent v. Dulles* (1958), 357 U.S. 116, 2 L. Ed. 2d 1204, 78 S. Ct. 1113, and *Aptheker v. Secretary of State* (1964), 378 U.S. 500, 12 L. Ed. 2d 992, 84 S. Ct. 1659, which involved restrictions upon the issuance of passports to certain persons because of their political beliefs or associations. Nor do we see any reason to anticipate that this statute will give rise to problems under the commerce clause of the Federal Constitution.

The primary interest advanced by the State to justify the restrictions of the statute as to time, place and circumstance is the traditional right of the State to protect its children. The statute proceeds upon the basic assumption that when a child is at home during the late night and early morning hours, it is protected from physical as well as moral dangers. Although there are instances, unfortunately, in which this assumption is untrue, we are satisfied that the State is justified in acting upon it.

In legislating for the welfare of its children, the State is not required, in our opinion, to proceed upon the assumption that minor children have an absolutely unlimited right not only to choose their own associates, but also to decide when and where they will associate with them. Recognition of such a right would require wholesale revision of the large body of law that relates to guardian and ward, parent and child, and minors generally. Compulsary school attendance would be prohibited. A child is carefully safeguarded against errors of choice and judgment in most of the ordinary affairs of life, and we see no constitutional impairment in the limited restriction upon the child's judgment that is involved in this statute. It is only during the very late night and early morning hours that the State has interfered, and then only by requiring that the child be accompanied by an adult.

By providing a sanction against the parent who knowingly permits a child to violate the statute, the cooperation of the parent is commanded. That sanction

may also operate indirectly to enlist cooperation from the child, who may be willing to risk getting into trouble himself, but unwilling to involve his parents in a violation of the law. Parental control is thereby strengthened.

In addition to the concern of the State with the moral and physical welfare of its children, there are other considerations which bear upon the validity of the statute. The phenomenon of increased juvenile crime has been frequently noted. In 1958 a note in the *Pennsylvania Law Review* pointed out:

> "The number of persons arrested in the United States under eighteen years of age increased from 31,750 in 1948 to 234,474 in 1956. During the same period the percentage of arrests of persons under eighteen years of age as compared to total arrests increased from 4.2% to 11.3%. Changes in some of the more serious crimes are:

|  | 1948 | | 1956 | |
|---|---|---|---|---|
|  | No. of persons arrested under 18 | Percentage of total arrests | No. of persons arrested under 18 | Percentage of total arrests |
| Criminal Homicide | 208 | 3.1 | 213 | 6.2 |
| Robbery | 1,121 | 5.4 | 2,692 | 24.7 |
| Assault | 1,157 | 2.0 | 7,531 | 7.3 |
| Rape | 773 | 8.1 | 840 | 18.3 |
| Larceny | 6,093 | 8.9 | 46,477 | 50.4 |
| Auto Theft | 3,030 | 17.1 | 18,622 | 66.4 |

FBI, 19 Uniform Crime Reports 117 (1948); FBI, 27 Uniform Crime Reports 110 (1956)." 107 Pa. L. Rev. 66 n.1.

The trend thus noted in 1958 has continued:

> "In recent years the number of delinquency arrests has increased sharply in the United States, as it has in several European countries studied by the Commission. Between 1960 and 1965, arrests of persons under 18 years of age jumped 52 percent for willful homicide, rape, robbery, aggravated assault, larceny, burglary and motor vehicle theft. During the same period, arrests of persons 18 and over for these offenses rose only 20 percent. This is explained in large part by the disproportionate increase in the population under 18 and, in particular, the crime-prone part of that population—the 11- to 17-year-

old age group." President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*, at 56 (1967).

That the continuing increase was not wholly attributable to the post-World War II "baby boom" has become clear, however, because between 1970 and 1975 the total number of arrests of males under 18 for property crimes (burglary, larceny and motor vehicle theft) increased by 20.8% and the number of females under 18 arrested for those crimes increased 38.6%. During the same period, in the case of violent crimes (murder, manslaughter, forcible rape, robbery and aggravated assault) the number of arrests of males under 18 increased by 51.9% and the number of arrests of females under 18 increased by 74.2%. 1975 Uniform Crime Reports (Table 33).

We have engaged in this somewhat tedious statistical demonstration of what is actually common knowledge to show that the General Assembly was not acting upon whim or caprice in adopting this statute, but rather was engaged in an essential—indeed vital—effort to deal with what is certainly one of the most serious problems of our time. Far more is involved than "police convenience." Of course this statute can not effect a complete cure. The causes of the shocking increase in juvenile crime lie too deep. Even so, however, it does not follow that this legislative effort infringes constitutional rights.

The appellate court was also of the opinion that the statute in this case swept too broadly since it was not confined with particularity to geographical areas of the State in which the crime rate is extraordinarily high. In our opinion this conclusion was erroneous. The question of geographical scope is a matter for legislative, rather than judicial, determination. And in any case the current increase in crime in rural and suburban areas would justify statewide action. The 1975 Uniform Crime Reports (Tables 40, 46, 51) show an increase between 1974 and 1975 of 0.9% in arrests of persons under 18 in cities; the

comparable increase in suburbs was 4.4%, and in rural areas 4.3%.

The judgment of the appellate court is reversed.

*Judgment reversed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. Although I agree with the appellate court that the statute unreasonably restricted the rights of persons under 18, I am of the opinion that it was invalid for reasons not mentioned either by the appellate court or the majority. The statute proscribed the presence of persons less than 18 years of age at enumerated places and times "unless accompanied and supervised by a parent, legal guardian or other responsible companion at least 21 years of age approved by a parent or legal guardian or unless engaged in a business or occupation which the laws of this State authorize a person less than 18 years of age to perform: ***." In *Connally v. General Construction Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127, in holding an Oklahoma statute invalid the Supreme Court said: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." The vice of this statute is that "men of common intelligence must necessarily guess at its meaning" and that it left to. the subjective determination of the arresting officer the questions whether the minor was being "supervised" and whether the companion over 21 was "responsible." Furthermore, the police officer was left free to determine whether the "responsible companion" was responsible in

the sense that he was trustworthy or that he must answer to the parent or legal guardian. Had there been two young men 21 years of age in the car at the time of the incident, the arresting officer, without any standards, would have been free to determine whether they were "responsible companions" and whether the defendants were being "supervised."

The statistics cited by the majority are, of course, interesting but are utterly without value insofar as the crucial question presented is concerned, *i.e.,* how many of these offenses are committed between 12:01 a.m. and 6 a.m. on Saturday and Sunday and between 11 p.m. and 6 a.m. the remainder of the week.

The majority's construction of the exception for minors engaged in a business or occupation is that it "necessarily includes getting to and from the job." (66 Ill. 2d at 41.) Once again the arresting officer, without statutory standards, must subjectively determine whether this construction required the minor to travel by the shortest and most direct route and whether a stop for food or refreshment was permissible. Furthermore, no provision was made for minors emancipated by marriage or other means, and unquestionably the junior class of almost every high school in the State, *en masse,* violated this statute at least once each year.

I am aware that the welfare of minors is of concern to the General Assembly, but enactment of a statute so vague as to violate due process is not the method of achieving its goals. I would affirm the judgment of the appellate court.

MR. CHIEF JUSTICE WARD joins in this dissent.