**Kathleen McCOLLESTER, a minor, by her father and next friend, Gordon McCollester, and Gordon McCollester, Individually**

v.

**The CITY OF KEENE, NEW HAMPSHIRE, Richard Peloquin, Mayor of the City of Keene, Patrick MacQueen, City Manager for the City of Keene, Harold Becotte, Police Chief for the City of Keene.**

Civ. No. 80–472–D.

United States District Court,
D. New Hampshire.

May 15, 1981.

Russell F. Hilliard, Jon H. Meyer, NHCLU, Concord, N.H., for plaintiff.

Eugene M. Van Loan, III, Manchester, N.H., for defendant.

## OPINION

DEVINE, Chief Judge.

On July 3, 1980, the City of Keene, New Hampshire, adopted the provisions of N.H. RSA 31:43–a *et seq.*, and thereby enacted a juvenile nocturnal ordinance. The ordinance prohibited persons under sixteen years of age from being on the public streets or in a public place after nine o'clock in the evening, the only exception to this prohibition being when the juvenile was accompanied by a parent, guardian, or other suitable person. City of Keene Resolution 80–48. On July 17, 1980, the effective time of the curfew was changed from nine to ten o'clock. City of Keene Resolution 80–52.

On September 29, 1980, plaintiffs' complaint was filed with this court. Plaintiffs are an adult and his daughter who is less than sixteen years of age, both Keene residents. Defendants are the City of Keene; Richard Peloquin, Mayor of Keene; Patrick MacQueen, City Manager of Keene; and Harold Becotte, Police Chief of Keene. Plaintiffs alleged the ordinance was being enforced by arrest and prosecution and that the curfew prohibited the minor child from exercising certain constitutional rights, thereby also prohibiting the parent from allowing the minor to exercise such rights. Their causes of action were based upon 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, and 2202, with the jurisdiction of this court found in 28 U.S.C. § 1343.

Since the filing of the complaint the ordinance has been substantially amended. On February 5, 1981, the curfew law was amended to state in pertinent part as follows:

1. That the curfew which goes into effect at 10:00 PM each evening in Keene shall end at 5:00 AM on the following morning.

2. That the curfew shall apply to the persons under the age of 16 years who are not accompanied by a parent or legal guardian or by another person over the age of 18 years authorized or approved by the child's parent or guardian.

3. That 'public place' be defined as parks, playgrounds, schoolyards, governmental building yards, vacant lots, municipal parking lots and parking lots open to the public (such as parking lots of supermarkets, restaurants, movie theaters and other places of public accommodation).

4. That 'public street' be defined as streets, sidewalks, and private ways open to public use.

5. That the curfew shall be inapplicable to those persons under the age of 16 years who shall be en route to or from the following:

   1. A place of his or her employment,
   2. A restaurant, library, movie theater, store or other place of public accommodation,
   3. A play, dance, sporting event or other event of public entertainment,
   4. A church, meeting hall, school, courthouse or other place of public assembly or worship.

   Except, however, in the case of employment, the above exception for travel shall not excuse any person under the age of 16 years from the curfew beyond 12:00 midnight.

6. That 'being' on a public street or in a public way shall include being in or on a motor vehicle.

City of Keene Resolution 81–4A. It is this present ordinance which is before the Court for consideration. While keeping in mind the fact that plaintiffs have not alleged facts sufficient to be granted standing to challenge the ordinance as it is applied in the community, but do have standing to challenge its facial validity, and that this amended ordinance has not in fact been enforced as of yet, we now turn to the merits of the cross motions for summary judgment.

Plaintiffs challenge the Keene curfew on the bases that it violates (1) the United States Constitution's Fourteenth Amendment Due Process Clause because of vagueness in wording and infringement of fundamental rights; (2) the United States Constitution's Fourteenth Amendment Equal Protection Clause because it impermissibly impinges fundamental rights; and (3) the United States Constitution's First Amendment by unnecessarily infringing upon the rights of free speech, association, and assembly. The Court first turns to the procedural due process question of vagueness.

Initially we note it is well established that

[a] legislative enactment which either forbids or requires the doing of an act in language so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law—to wit, providing fair warning and notice of what is prohibited or required so that one may act accordingly.... 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' ... In addition, laws must provide reasonably clear standards for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement.... A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis ... and vague standards result in erratic and arbitrary application based on individual impressions and personal predilections.... Legislation must not be so vague, the language so loose, as to leave to those who have to apply it too wide a discretion. Legislation which is ambiguous, imprecise, and vague 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' ....

*Bykofsky v. Borough of Middleton*, 401 F.Supp. 1242, 1248–49 (M.D.Pa.1975) (citations omitted). Specifically, plaintiffs object to the vagueness of who is "an authorized or approved" adult, what constitutes a "place of public accommodation" or an "event of public entertainment", and what constitutes a "place of public assembly".

■ The words "authorized" and "approved" are words of common usage and meaning. To "authorize" another to act in one's stead is to endorse or empower that person to so act. Webster's Third New International Dictionary (Unabridged) (1976). To "approve" another to act in one's stead is to judge and find commendable or acceptable that person to so act. *Id.* Therefore, the ordinance requires the affirmative act by the parent of judging the other person suitable and empowering that person to accompany the child prior to the accompaniment's beginning.

This exception is a logical extension of the parent's or guardian's accompanying the child. The determination having been made that this other person is suitable to stand in the stead of the parent or guardian, it would be absurd to require a redetermination of suitability every time a similar situation presents itself. Rather, the more logical and less cumbersome construction of the ordinance would allow the authorization or approval to be effective until such time as the parent or guardian revokes it.

■ The other phrases of which plaintiffs complain are "place of public accommodation", an "event of public entertainment", and a "place of public assembly". These phrases are used at the end of strings of specific examples stated for each category. To exclude these phrases and require a comprehensive list of specific exceptions clearly is not required under the law. "While there must be definiteness and ascertainable standards so that [people] of common intelligence can apprehend the meaning of the ordinance, perfect precision is neither possible nor constitutionally required". *Bykofsky v. Borough of Middletown, supra* at 1253. We find the standards for each category are ascertainable from the specific examples given.

■ Thus the Court finds plaintiffs' argument concerning vagueness to be without merit. The ordinance as written provides adequate and fair warning of the prohibited conduct and does not place unfettered discretion in the hands of either enforcement officials or judges and juries.

■ The next issue is whether the ordinance is overbroad as that term applies to the Fourteenth Amendment of the United States Constitution. It is clear that a minor is a "person" under the United States Constitution. "[Minors] are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969). It is equally clear that a minor's constitutional rights are in some instances not co-extensive with those of adults. *Id.* at 515, 89 S.Ct. at 741 (Stewart, J., concurring). This statement, however, is not to be interpreted to mean that minors possess but the bare minimum of rights provided by the Constitution. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 533, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647 (1971). It is clear that whatever the extent of the interest asserted here, it is beyond question there is a liberty interest at issue. But, one must bear in mind that even for adults "... personal freedoms are not absolute, and the liberty guaranteed by the due process clause implies absence of arbitrary interference but not immunity from reasonable regulations." *Bykofsky v. Borough of Middletown, supra* at 1255 (citations omitted). Thus, a court in

> [d]etermining that a personal liberty is involved has answer[ed] only the first of two questions. The second is whether there is an outweighing state interest justifying the intrusion. The answer to this question must take into account the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion is confined to the legitimate public interest to be served.

*Richards v. Thurston*, 424 F.2d 1281, 1285 (1st Cir. 1970). *See also Aptheker v. Secretary of State*, 378 U.S. 500, 507–08, 84 S.Ct. 1659, 1664, 12 L.Ed.2d 992 (1964).

The liberty interest advanced by the minor plaintiff here is the right to use public streets and facilities, *see* Plaintiffs' Complaint, paragraphs 6 and 8, or otherwise stated, "... the right to locomotion, freedom of movement, to go where one pleases, and to use the public streets and facilities in a way that does not interfere with the personal liberty of others", Memorandum in Support of Plaintiffs' Motion for Summary Judgment, p. 6. "No right is more sacred, or is more carefully guarded, by the liberty assurance of the due process clause than the right of every citizen to the possession and control of his own person ....", *Bykofsky v. Borough of Middletown, supra* at 1255, because "[o]nly when he is in public may he enjoy the most meaningful exercise of his freedom of speech, his freedom of association, his freedom peaceably to assemble with others, and his freedom of religion". *People v. Chambers*, 32 Ill.App.3d 444, 335 N.E.2d 612, 617 (1975). Thus, one cannot help but conclude that the rights at issue here are invaluable and in fact central to American citizenship.

However, the context in which these rights are asserted does mitigate against the forcefulness of their nature. The rights directly in question here are the rights of minors. While one can define the protected boundaries of the due process rights of adults, it is a more difficult task to determine where within those boundaries lies the amount of protection afforded minors' due process rights. As Justice Marshall stated in his dissent of the Supreme Court's denial of a writ of certiorari in *Bykofsky v. Borough of Middletown*, 429 U.S. 964, 965, 97 S.Ct. 394, 395, 50 L.Ed.2d 333 (1976), "The question squarely presented by this case, then, is whether the due process rights of juveniles are entitled to lesser protection than those of adults. The prior decisions of this Court provide no clear answer." (Footnote omitted.)

Although the Supreme Court still has not clearly defined the amount of protection afforded minors' due process rights, at least in this context, the Court did set out an analysis helpful in making such determinations in a decision involving a minor's right to decide whether to have an abortion. *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("*Bellotti II*").

Therein, the Court stated three reasons justifying why the protections afforded a minor's rights would not be coextensive with those of an adult:

the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.

*Id.* at 634, 99 S.Ct. at 3043.

The first reason is quite applicable to the instant case. Although antisocial activity was the purpose of adopting the ordinance stated in the preamble, *see* City of Keene Resolution 80–48, there are indications in the record that the safety and general welfare of vulnerable, impressionable minors was an unstated purpose in the minds of several of the legislators when the ordinance was being considered. *See* Affidavits of David R. Meader, Terry A. Bishop, Robert F. Wilber, Timothy N. Robertson, and Paul T. Cavanaugh, attached to defendants' Supplementary Documentation in Opposition to Plaintiffs' Motion for Summary Judgment.[1]

The Court, in the context of this discussion of the vulnerability of minors, stated that where deprivations of liberty are in issue, it has often concluded the rights of minors and adults are "virtually coextensive". *Id.* The Court went on to say that although minors "... generally are protected by the same constitutional guarantees against governmental deprivations [of liber-

---

1. When considering the purpose of legislation, purposes stated in the preamble are entitled to weight, though not conclusive, 1A Sutherland Statutory Construction § 20.03, and a court may consider such things as the circumstances under which the ordinance was enacted. *Alessandro v. Borough of Braddock*, 37 Pa.Cmwlth. 513, 391 A.2d 38, 40 (1978).

ty] as adults", *id.* at 635, 99 S.Ct. at 3044, that does not mean the rights of minors and adults are "indistinguishable". Rather, the protections afforded those rights by the legal system may be altered by the State, evidencing the minor's "vulnerability" and ". . . need for 'concern, . . . sympathy, and . . . paternal attention.' [*McKeiver v. Pennsylvania, supra,* 403 U.S.] at 550 [91 S.Ct. at 1988] (plurality opinion)." *Id.*

■ The second factor discussed by the Court in *Bellotti II* was the minor's inability to make critical decisions in an informed, mature manner. This inability is attributed to the minor's lack of experience, perspective, and judgment. *Id.* We have difficulty characterizing a decision of a minor to venture into the darkness of night as a "critical" decision when compared to a decision of a minor to opt for abortion of her pregnancy. However, we do find that there may be occasions when the decision to go out during the curfew hours is critical to the minor in order that they ". . . avoid choices that could be detrimental to them". *Id.* The state has a valid interest in the well-being of its minor citizens in such instances. *Id.; Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). In basing its reasoning in *Ginsberg v. New York, supra,* the Court implicitly adopted the reasoning of that 1968 decision. *Bellotti II, supra,* 443 U.S. at 636, 99 S.Ct. at 3044.

In *Ginsberg v. New York, supra,* the Court found the State to have two interests justifying the regulation of children. ". . . [P]arents and others, teachers for example, who have [the] primary responsibility for children's wellbeing are entitled to the support of laws designed to aid discharge of that responsibility". *Id.* 390 U.S. at 639, 88 S.Ct. at 1280. Secondly, "[w]hile the supervision of children's [activity] may best be left to their parents, the knowledge that parental control or guidance cannot always

be provided and society's transcendent interest in protecting the welfare of children justif[ies the State's] reasonable regulation."[2] *Id.* at 640, 88 S.Ct. at 1281, *quoting People v. Kahan,* 15 N.Y.2d 311, 312, 258 N.Y.S.2d 391, 392, 206 N.E.2d 333, 334 (Fuld, J., concurring).

The final factor discussed by the Court in *Bellotti II* was the guiding role of parents in the upbringing of their children. Instilling the principles of morality, ethical conduct, religion, and citizenship is primarily the function and responsibility of the minors' parents and, in large part, is beyond the competence of impersonal political institutions. *Bellotti II, supra* 443 U.S. at 632–38, 99 S.Ct. at 3042–45. The Court found the limitation on minors' rights created by the role of parental authority is consistent with the notion of individual liberty. "Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances of full growth and maturity that make eventual participation in a free society meaningful and rewarding." *Id.* at 638–39, 99 S.Ct. at 3045–46 (footnote omitted).

In applying the reasoning of the Court in *Bellotti II,* we find the City of Keene without the state's interests which were found to be legitimate in causing regulation of the conduct of minors to a greater degree than adults in *Bellotti II.* The first state interest validated in *Bellotti II* was where the law is ". . . designed to *aid* [the parent] in discharge of [the parental] responsibility." *Id.* at 639, 99 S.Ct. at 3046 (emphasis added). The plaintiff parent would not be here if he perceived the ordinance as an aid; rather, he views it as at least an intrusion to family autonomy and as a possible threat to family serenity and integrity. While a plaintiff parent might take a similar view of other statutory schemes, such as N.H. RSA 169–D, the Children in Need of Services Act, ("CHINS Act"), there is a major distinction between the two pieces of legislation in this regard. Under the CHINS

---

**2.** The fact that the case dealt with obscene material, which is not entitled to constitutional protection under the First Amendment, *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), may well explain why the Court only tested the "reasonableness" of the regulation. *See, Ginsberg v. New York, supra* 390 U.S. at 633–37, 88 S.Ct. at 1276–79.

Act, the parent or guardian is subject to process by the Court. N.H. RSA 169–D:6. However, as distinguished from the instant case where the parent is subject to sanctions available for sentencing misdemeanants, see N.H. RSA 31:43–e through –g; N.H. RSA 651:2 I, the parent under the CHINS Act may only be ordered to accept therapeutic counseling or medical treatment. N.H. RSA 169–D:17 III. Thus, the possible action against parents which is available under the CHINS Act can easily be construed as supportive in nature, whereas the alternative forms of action to be taken against parents under the curfew ordinance are found in the criminal code.

Further, defendants' counsel has also argued that this statutory scheme of parental liability is not novel, pointing out the similarity it bears to New Hampshire's Delinquent Children Act, N.H. RSA 169–B. But again, there is an important distinction to be made. Under the Delinquent Children Act, the parent, guardian, or custodian of the child can be found liable for either criminal or civil penalties. The criminal liability arises when the parent intentionally contributes to the minor's acts of delinquency, N.H. RSA 169–B:41, with delinquency being defined under the statute as an act which, if committed by an adult, would be a felony or misdemeanor, N.H. RSA 169–B:2 II. Alternatively, civil sanctions against the parent or guardian in the form of restitution liability is allowed where that person "... failed or neglected to exercise reasonable supervision and control of the child's conduct". N.H. RSA 169–B:45.

Thus, under the Delinquent Children Act, the parent, guardian, or custodian must have either affirmatively acted to aid the child in committing what would be a felony or misdemeanor if the minor were an adult, or failed to exercise reasonable supervision and control. Under the curfew ordinance the situation is markedly different. The parent need not have aided the child in committing any misdemeanor or felony to be found liable under the curfew law. In fact, we note that under the state statute and the city ordinance, the minor's acts do not constitute a felony, misdemeanor, or violation; it is the giving of permission that is a violation of the law.

Further, the parent need not have exercised control or supervision which could be characterized as negligent in order that the parent or guardian be found liable under the ordinance. For example, the parental decision to let a minor continue a basketball game in a neighbor's backyard two houses from his own until 10:15 p. m. may result in liability if the minor then comes home alone promptly at 10:15 p. m. Another instance would be that of parents making the decision to allow two children, ages fifteen and seventeen, to drive through several states, including New Hampshire, to visit a grandparent in another state. If their schedule happens to be such that the children pass through Keene between the hours of 10 p. m. and 5 a. m. the parents may be found liable if the children are stopped. Finally, the decision by a parent to send a minor out because of the need for medical help for an ill parent, or for any other emergency reason, may result in liability should the child be stopped.

But for the ordinance, it would be difficult to characterize these parental decisions as unreasonable. Further, the conduct of the minors not only is blameless under the law, but also may be totally innocent in nature. These are only three examples of the extent to which a minor's freedoms and a parent's discretion are restricted.

Yet, there are instances where the legislation need not be considered supportive of the parental role to be valid, e. g., compulsory education, and in fact is perceived as usurping what is a traditionally parental decision. This type of state interest may be utilized where "... parental control or guidance cannot ... be provided ...." Bellotti II, supra at 640, 99 S.Ct. at 3046.[3]

---

**3.** See Bellotti II, supra at 639, n.18, 99 S.Ct. at 3046, n.18, which states;

The Court's opinions discussed in the text above—Pierce, Yoder, Prince and Ginsberg —all have contributed to a line of decisions

However, as evidenced by the Supreme Court decisions in *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), there are greater restrictions placed on the state regarding the extent to which it may legislate in this area. Consequently, this second type of state interest received a much more limited endorsement by the Supreme Court than where legislation is designed to support the parental role. *Bellotti II, supra*, 443 U.S. at 636–38, 99 S.Ct. at 3044–45.

■ The Keene curfew ordinance does not fit within the circumstances where the state may usurp the parental role. To be in violation of the Keene curfew, the parent must have "permitted" the minor to go outside. As evidenced above, there are many situations which are within the purview of the ordinance even though the parent did exercise reasonable "parental control or guidance". It follows that this curfew is not one of the limited instances where the state may exercise what is otherwise considered the traditional role of parents.

■ The Court therefore finds the state's intrusion which restricts the rights of parents and their minor children to be substantial and without the state interest necessary to justify such intrusion under the rule of *Richards v. Thurston, supra*. While compelled to strike down this ordinance because it unduly overburdens minors' rights and does not fit within the state's interests validated by *Bellotti II*, we do understand the concern of the Keene City Council to control what they perceive to be a problem. A city's legislative body

does have authority within its delegated police power to take steps to control such problems as it perceives to exist in the community. The manner in which they attempt to alleviate a problem under such authority is most often a matter of discretion. That discretion is to be exercised by the legislature and not the courts. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

However, where the legislation goes beyond the bounds of discretion available to the city, the judiciary, if called upon, must step in. Given the record before the Court as a whole, the circumstances here involved, the purposes of the legislation, the legislative scheme as set out in the ordinance, and the sanctions available for its enforcement, the Court finds and hereby rules the ordinance as presently written is unconstitutional and therefore must be stricken.

SO ORDERED.

---

suggesting the existence of a constitutional parental right against undue, adverse interference by the State. See also *Smith v. Organization of Foster Families*, 431 U.S. 816, 842–844 [97 S.Ct. 2094, 2108–2109, 53 L.Ed.2d 14] (1977); *Carey v. Population Services International*, 431 U.S. 678, 708 [97 S.Ct. 2010, 2028, 52 L.Ed.2d 675] (1977) (opinion of Powell, J.); *Moore v. East Cleveland*, 431 U.S. 494 [97 S.Ct. 1932, 52 L.Ed.2d 531] (1977) (plurality opinion); *Stanley v. Illinois*, 405 U.S. 645, 651 [92 S.Ct. 1208, 1212, 31 L.Ed.2d 551] (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042] (1923). Cf. *Parham v. J. R.*, 442 U.S. 584 [99 S.Ct. 2493, 61 L.Ed.2d 101] (1979); *id.*, at 621 [99 S.Ct., at 2513] (Stewart, J., concurring in result).