The PEOPLE of the State of Colorado, Plaintiff–Appellee, in the Interest of J.M., a minor child, Defendant–Appellant,

and Concerning A.M., Respondent.

No. 87SA252.

Supreme Court of Colorado, En Banc.

Jan. 23, 1989.

Rehearing Denied Feb. 13, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paul H. Chan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Victor I. Reyes, Deputy State Public Defender, Pueblo, for defendant-appellant.

ROVIRA, Justice.

J.M., a juvenile, was convicted of loitering by a minor after curfew, in violation of Pueblo, Co., Municipal Code § 11–1–703

(1982). In this appeal,[1] J.M. claims that the ordinance is unconstitutional, both on its face and as applied, on the grounds that it violates his constitutionally protected liberty interests and impermissibly infringes on the first amendment rights of all minors. We conclude that the ordinance serves a legitimate state objective and thus does not violate either the United States or Colorado Constitutions. We therefore affirm the judgment of the trial court.

I.

At 11:45 p.m. on August 16, 1985, an officer was dispatched to investigate a reported vandalism at Vinewood Park in Pueblo, Colorado. Upon searching the park on foot, the officer found J.M. and a female companion hiding behind some bushes near the site of the alleged vandalism. The officer determined that J.M. had not committed the reported vandalism. However, because J.M. appeared intoxicated and was under eighteen years of age, he was taken into custody for possession of an alcoholic beverage and for violating section 11–1–703 of the Pueblo Municipal Code, which prohibits loitering by minors after curfew.

J.M. was tried in a juvenile delinquency proceeding and was convicted of violating section 11–1–703, and acquitted of possession of an alcoholic beverage. Upon his adjudication as a delinquent child, he was fined $25. J.M. appeals this adjudication on the basis that the Pueblo municipal ordinance is unconstitutional on its face and as applied.[2] We first address the constitutionality of the ordinance as applied to J.M.

II.

Pueblo, Co., Municipal Code § 11–1–703, states:

(1) Definitions. as used in this section:

(A) "Loitering" or "Loiter" shall mean remaining idle in essentially one location,

---

1. The appeal was originally filed in the court of appeals, but was transferred to this court because the constitutionality of an ordinance is at issue. *See* §§ 13–4–102(1)(b) and 13–4–110, 6A C.R.S. (1987).

2. No claim is made by J.M. in his brief that the Pueblo ordinance is unconstitutionally vague, *see People in Interest of C.M.*, 630 P.2d 593 (Colo.1981), and we accordingly express no view on that issue.

to be dilatory, to tarry, to dawdle and shall include but not be limited to standing around, hanging out, sitting, kneeling, sauntering or prowling.

(2) It shall be unlawful and a Class 2 municipal offense for any person under the age of 18 years to loiter on or about any street, sidewalk, curb, gutter, parking lot, alley, vacant lot, park, playground or yard, whether public or private, without the consent or permission of the owner or occupant thereof, during the hours between 10:00 o'clock P.M. and 6:00 o'clock A.M. according to the applicable time standard then in effect for the City, unless accompanied by a parent, guardian or other adult person over the age of twenty-one years.

J.M. contends that the ordinance impermissibly interferes with his constitutionally protected liberty interests in violation of Colo. Const. art. II, § 3, and the fifth and fourteenth amendments to the United States Constitution. He claims that the right to stroll, loiter, loaf, and use the public streets and facilities in a way that does not interfere with the personal liberties of others is a fundamental right which may not be infringed by the state absent a compelling interest.

Although not labeled a "fundamental right," the United States Supreme Court has defined the activities enumerated by J.M. as historical "amenities of life." In *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the Court invalidated a Jacksonville vagrancy ordinance. In discussing the acts of walking, wandering, strolling, loafing, and loitering, the Court stated:

The difficulty is that these activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be nonconformist and the right to defy submissiveness. They

have encouraged lives of high spirits rather than hushed, suffocating silence. *Id.* at 164, 92 S.Ct. at 844. *See also Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed. 2d 201 (1973) (Douglas, J., concurring opinion, wherein he termed the freedom to walk, stroll or loaf a fundamental freedom). In *Kent v. Dulles,* 357 U.S. 116, 125–26, 78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204 (1958), a case dealing with the right to travel abroad, the Court concluded that freedom of movement and the right to travel are "a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment ..." and that these rights are "basic in our scheme of values." Many jurisdictions have treated as fundamental the right to freedom of movement and the right to use the public streets and facilities in a way that does not interfere with the liberty of others. *See Territory of Hawaii v. Anduha,* 48 F.2d 171 (9th Cir.1931); *People v. McKelvy,* 23 Cal.App.3d 1027, 100 Cal.Rptr. 661 (1972); *People v. Kearse,* 56 Misc.2d 586, 289 N.Y.S.2d 346 (1968); *State v. Dobbins,* 277 N.C. 484, 178 S.E.2d 449 (1971); *Hayes v. Municipal Court,* 487 P.2d 974 (Okla.1971); *City of Portland v. James,* 251 Or. 8, 444 P.2d 554 (1968); *Seattle v. Drew,* 70 Wash.2d 405, 423 P.2d 522 (1967); *Ervin v. State,* 41 Wis.2d 194, 163 N.W.2d 207 (1968).

We agree that, as to adults, the rights of freedom of movement and to use the public streets and facilities in a manner that does not interfere with the liberty of others are basic values inherent in a free society and are thus protected by article II, section 3 of the Colorado Constitution and the due process clause of the fourteenth amendment to the United States Constitution. Because these liberty interests are fundamental, the state must establish a compelling interest before it may curtail the exercise of such rights by adults. We now examine whether a minor's freedom of movement also constitutes a fundamental right.

It is undisputed that minors, as well as adults, are protected by the Constitution and possess constitutional rights. "Consti-

tutional rights do not mature and come into being magically only when one attains the state-defined age of majority." *Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). While the United States Supreme Court has recognized that minors are persons "possessed of fundamental rights which the State must respect," *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969), it has not fully articulated how the existing framework for analyzing rights of adults is to be applied to minors.

It is clear, however, that the constitutional rights of adults and juveniles are not co-extensive. Both the United States Supreme Court and this court have recognized that the state has broader authority to control and supervise the activities of children than those of adults. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *People in Interest of D.G.*, 733 P.2d 1199 (Colo.1987).

For example, the Court in *Prince* upheld the constitutionality of a statute which restricted a minor's use of the streets for selling religious magazines. After acknowledging that the statute would be invalid as to adults, it said:

The state's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment.

. . . .

It is true children have rights, in common with older people, in the primary use of highways. But even in such use streets afford dangers for them not affecting adults. . . . What may be wholly permissible for adults therefore may not be so for children, either with or without their parents' presence.

. . . .

. . . We think that with reference to the public proclaiming of religion, upon the streets and in other similar public places, the power of the state to control the conduct of children reaches beyond the scope of its authority over adults, as is true in the case of other freedoms, and the rightful boundary of its power has not been crossed in this case.

*Prince*, 321 U.S. at 168–70, 64 S.Ct. at 443–44. The Court also recognized that a minor's first amendment rights are not co-extensive with those of adults in *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), where it upheld a statute prohibiting the sale of sexually explicit magazines to minors.

This augmented state authority over children's activities and the corresponding diminution of children's constitutional rights have also been demonstrated in cases concerning the privacy and procedural due process rights of minors. In considering a minor's privacy rights, the Court upheld a statute which required parental notification before a minor could obtain an abortion in *H.L. v. Matheson*, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981). In *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the Court refused to extend the right to a jury trial to juvenile cases, thereby denying minors a right of the adult criminal justice system. We arrived at a similar conclusion in *People in Interest of T.M.*, 742 P.2d 905 (Colo. 1987).

Finally, the Court has indicated that a child's liberty interests are not co-extensive with those of an adult. In *Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed. 2d 207 (1984), it upheld the preventative detention of an accused juvenile delinquent where there was a serious risk that the juvenile might commit a crime before his trial date. In discussing the extent of a juvenile's liberty interests, the Court stated:

The juvenile's countervailing interest in freedom from institutional restraints, even for the brief time involved here, is undoubtedly substantial as well. . . . But that interest must be qualified by the recognition that juveniles, unlike adults, are always in some form of custody. . . . Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject

to the control of their parents, and if parental control falters, the State must play its part as *parens patriae....* In this respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's *parens patriae* interest in preserving and promoting the welfare of the child.

*Id.* at 265, 104 S.Ct. at 2410. *See L.O.W. v. District Court,* 623 P.2d 1253 (Colo.1981), in which we decided that a juvenile's right to bail is not co-extensive with that of an adult.

The Court has recognized three reasons which justify the conclusion that the constitutional rights of minors cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing. *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

 We believe that a child's liberty interest in being on the streets after 10:00 o'clock at night is not co-extensive with that of an adult. The three factors enumerated in *Bellotti* are all present in this case. Youths abroad at night are more vulnerable to crime and peer pressure than their adult counterparts. Similarly, a child's immaturity may lead to a decision to commit delinquent acts, such as vandalism, drug or alcohol use, or crimes of violence. Although adults may also make these decisions, they are more likely to do so in an informed and mature manner with full consideration of the consequences of their acts. Courts have recognized that, during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them. *Bellotti,* 443 U.S. at 635, 99 S.Ct. at 3044. Finally, controlling a minor's freedom of movement after 10:00 p.m. reinforces parental authority and encourages parents to take an active role in supervising their children. In light of these considerations, we conclude that J.M.'s liberty interest in freedom of movement does not constitute a fundamental right.

An ordinance which does not infringe upon a fundamental right or create a suspect classification [3] is generally measured by the rationality standard. *Zavala v. City & County of Denver,* 759 P.2d 664 (Colo. 1988). Because we hold that J.M.'s liberty interest is not "fundamental," the state need only establish a legitimate purpose and a rational relation between the means employed and the goals to be obtained. *See Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); [4] *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242 (M.D.Pa.1975), *aff'd mem.,* 535 F.2d 1245 (3d Cir.), *cert. denied,* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976); *People v. Chambers,* 66 Ill.2d 36, 4 Ill.Dec. 308, 360 N.E.2d 55 (1976); *City of Eastlake v. Ruggiero,* 7 Ohio App.2d 212, 220 N.E.2d 126 (1966).

The People assert four state interests to justify this juvenile curfew: (1) the protection of children from each other and from other persons on the street during nighttime hours; (2) the protection of the public from nocturnal mischief by minors; (3) the reduction of juvenile criminal activity; and (4) the enforcement of parental control of and responsibility for their children. We believe that each of these interests qualifies as a "legitimate state interest." *See Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (crime prevention and protecting the community from crime are legitimate and compelling state interests); *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (pro-

---

**3.** J.M. does not claim that age classifications are suspect, nor could he after *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). *See also Shorez v. City of Dacono,* 574 F.Supp. 130 (D.Colo.1983).

**4.** We note that the United States Supreme Court has not yet developed a comprehensive framework for the treatment of juvenile rights. *Com-*

*pare H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) *and Carey v. Population Servs. Int'l,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), which require the state to establish a significant interest *with Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), which only requires that the state have a legitimate purpose.

tecting adolescents and promoting parental authority and family integrity are important interests); *In re C.*, 28 Cal.App.3d 747, 105 Cal.Rptr. 113 (1972) (community has a special interest in the protection of children of immature years); *City of Milwaukee v. K.F.*, 145 Wis.2d 24, 426 N.W.2d 329 (1988) (interest of the municipality in protecting youths and curtailing juvenile crime is compelling).

Furthermore, we note that the Pueblo ordinance is carefully drawn so as to further its goals without unduly infringing upon the liberty interest of minors. Juvenile curfews can be divided into two categories: those proscribing "presence," and those proscribing "loitering." Curfews which prohibit the presence of a minor on the streets after a certain hour have been held unconstitutional as an overly broad restriction on minors' liberty interests and first amendment activities. *See Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981); *McCollester v. City of Keene*, 514 F.Supp. 1046 (N.H.1981); *Alves v. Justice Court*, 148 Cal.App.2d 419, 306 P.2d 601 (1957); *W.J.W. v. State*, 356 So.2d 48 (Fla. App.1978); *Hayes v. Municipal Court*, 487 P.2d 974 (Okla.1971). In contrast, curfews which simply prohibit undirected or aimless activity of minors during the curfew hours, but which allow the minor to participate fully in employment, religious, civic, and social activities, have been upheld. *See People v. Walton*, 70 Cal.App.2d Supp. 862, 161 P.2d 498 (1945); *In re C.*, 28 Cal.App. 3d 747, 105 Cal.Rptr. 113 (1972); *Thistlewood v. Trial Magistrate*, 236 Md. 548, 204 A.2d 688 (1964); *City of Milwaukee v. K.F.*, 145 Wis.2d 24, 426 N.W.2d 329 (1988).

We believe that the Pueblo ordinance, which restricts minors for only a limited period of time in certain public places, is drawn as narrowly as practicable. A minor is free to participate in any activity, whether it be social, religious, or civic, so long as he travels directly to or from that activity. The ordinance simply prevents youths from aimlessly roaming the streets during the nighttime hours. In light of the state's legitimate interests, and the state's special role in the control and supervision of minors, we do not believe that this ordinance unconstitutionally infringes upon J.M.'s liberty interests.

III.

■ J.M. also claims that the Pueblo ordinance is overbroad, and thus unconstitutionally limits the first amendment rights of other juveniles. The People assert that J.M. does not have standing to challenge the ordinance on these grounds. We agree that J.M. lacks standing.

J.M. does not contend that his own first amendment rights were violated by enforcement of the ordinance. Rather, he claims that the ordinance may infringe on the first amendment rights of minors in general, and thus is facially invalid.

■ In general, a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). In first amendment cases, however, the rules of standing are broadened to permit a party to assert the facial overbreadth of statutes or ordinances which may chill the constitutionally protected expression of third parties, regardless of whether the statute or ordinance could be applied constitutionally to the conduct of the party before the court. *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *People v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985).

However, "particularly where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2918; *City of Englewood v. Hammes*, 671 P.2d 947 (Colo.1983). Here, the Pueblo ordinance regulates conduct and does not prevent minors from exercising their first amendment rights. Minors are free to attend political meetings, religious services, or other protected activities. Although the ordinance prevents minors from

loitering and staying unnecessarily upon the streets, it does not restrict those minors who are using the streets while actually in the process of going to or from protected activities.

■ There may be unusual cases in which a minor's first amendment activities will be curtailed through enforcement of the ordinance, but we cannot say that the asserted overbreadth of this statute is substantial in relation to its plainly legitimate sweep. *See People v. Milne,* 690 P.2d 829 (Colo.1984). It is up to the party invoking the doctrine to demonstrate "a realistic danger that the [ordinance] itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. at 2126. J.M. has not established a realistic danger that the ordinance will abridge the protected rights of other minors. Thus, he lacks standing to pursue this claim.

■ In any event, "even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct.'" *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1973) (quoting *C.S.C. v. Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2898, 37 L.Ed.2d 796 (1973)).

The judgment of the trial court is affirmed.