UNITED STATES of America

v.

BEXAR COUNTY, Bexar County Commissioners Court and its members, Bexar County Hospital District and members of its Board of Managers, Warren G. Harding, and Joseph Seitchik.

Lupe GUERRA, Eloisa Ramos, Mary Rocha, Ella Martinez, Mary Cantu, Alice Simmons, Tara Lewis, South Texas Health Consumers Association, Barrio Betterment and Development Corp., Inner City Development Corp., and City of San Antonio on behalf of its citizens,

v.

BEXAR COUNTY HOSPITAL DISTRICT, Sam Madrid, Tom Fordyce, Donald T. Hart, Ralph O. Dietert, Craig Johnson, Dr. M. L. Preacher, Harvey Komet; Bexar County Commissioners Court, A. J. Ploch, Tom Stolhandske, Jeffrey Wentworth, Leo Mendoza, Tom Vickers; Texas Health Facilities Commission, Melvin Roland, Reynold Rosson, Bolin Mahaffey; and Texas Department of Health.

Civ. A. Nos. SA78CA419, SA78CA421.

United States District Court,
W. D. Texas,
San Antonio Division.

Feb. 20, 1980.

**856**

Cathy S. Surace, Daniel A. Searing, Donald Pailen, U. S. Dept. of Justice, Civ. Rights Div., Washington, D. C., Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for U. S. A.

Stephen G. Cochran, Nancy O'Neill, Bexar County Legal Aid Association, San Antonio, Tex., for private plaintiffs.

Steven W. Arronge, Asst. City Atty., San Antonio, Tex., for City of San Antonio.

John A. Daniels, Jack Efron, Daniels, Efron & Holden, San Antonio, Tex., Raymond J. Kelly, Jr., Thomas G. Dent, Marc Krass, Seyforth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Bexar County Hospital District.

Keith W. Burris, Asst. Dist. Atty., San Antonio, Tex., for Bexar County Commissioners' Court.

## OPINION

SPEARS, District Judge.

This consolidated case was filed to challenge the statutory and constitutional validity of the decision of the Bexar County Hospital District to relocate all inpatient maternity and newborn nursery services from the Robert B. Green Memorial Hospital in downtown San Antonio to the Bexar County Hospital, located eleven miles to the northwest. The complaints were filed by a group of private citizens, several organizations which represent the health care interests of low-income minority women, the City of San Antonio, and the United States of America. Named defendants included Bexar County, the Bexar County Hospital District, the Bexar County Commissioners Court, various members of the Board of Managers of the Hospital District, the Executive Director of the Hospital District, the Texas Health Facilities Commission, the Texas Department of Health, and others. The plaintiffs seek, among other forms of equitable and declaratory relief, an injunction to prevent the proposed relocation of said maternity and nursery services. The federal plaintiff claims jurisdiction under the non-discrimination provisions of the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. § 1242 (the Revenue Sharing Act), and its implementing regulations, 31 C.F.R. § 51.50 et seq., subpart E. The private plaintiffs, including the City of San Antonio, claim jurisdiction under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 6252–16, Sec. 1(a) 7 of the Texas Civil Rights Act. A pretrial hearing was held on January 21, 1980, and the case went to trial before the Court on the following day.

### Historical Background

The Bexar County Hospital District was created in 1955 as a governmental entity with its principal function being to provide medical care to the indigent residents of Bexar County. Until 1968 the Hospital District provided virtually all of its services at

the Green Hospital, which was originally opened in 1917. In 1959, the Texas Legislature authorized the University of Texas to establish a medical school in San Antonio, contingent upon the construction by the City or County of a teaching hospital within one mile thereof, at no cost to the State. Following the University Board of Regents' decision to build the medical school on what was known as the "Oak Hills" site in northwest San Antonio, the Hospital District erected at that site the Bexar County Hospital, a 504-bed comprehensive medical facility to serve as the teaching hospital for the medical school. In 1968, the Hospital District relocated all of its inpatient services, *except* obstetrics and newborn nurseries, from the Green to the Bexar County Hospital. Plaintiffs contend that at that time, the Hospital District Board of Managers assured members of the community that the obstetrical services would remain at the downtown (Green) facility. Plaintiffs further contend that after the new hospital (Bexar County) was opened, the downtown facility was allowed to deteriorate and become obsolete. The Hospital District responded by showing that the downtown facility was twice expanded after the Oak Hills site was selected. The Executive Director of the Hospital District testified that the downtown facility now contains over 70 primary and specialty outpatient clinics, including a seven day a week walk-in clinic, as well as the inpatient maternity and nursery services for which relocation is proposed. These outpatient programs will not be adversely affected by the proposed relocation. As a matter of fact, present Hospital District plans call for utilization of the space now used for maternity services to further develop and expand the outpatient services.

In May, 1973, the consolidation of all inpatient services by relocating the obstetric and newborn nursery services to the Bexar County Hospital was formally proposed to the Hospital District Board of Managers at one of its regular public meetings. In June, 1976, the Board of Managers approved a "Facilities Development Program," which included the proposed relocation of inpa-

tient maternity and nursery services. In December, 1976, the Bexar County Commissioners Court, in a meeting open to the public, approved the Facilities Development Program, and authorized financing of the project entirely through a special issuance of Hospital District revenue bonds. The Hospital District then applied to the Texas Health Facilities Commission at Austin, Texas, for approval of the development program. The Commission scheduled a public hearing on the application, and directed the Hospital District to publish notice of the Hearing in two San Antonio newspapers. The notice, which was prepared by the Texas Health Facilities Commission, was published in the legal notices sections of the March 10, 1977, editions of the *San Antonio Express, San Antonio News* and *San Antonio Light*, three daily newspapers. The hearing was held in Austin on April 25–26, 1977, and on May 26, 1977, the Commission met in public session and acted favorably upon the Hospital District's application. Special revenue bonds in the amount of $13,165,000.00 were approved by the Bexar County Commissioners Court and sold publicly. On October 1, 1978, the Hospital District publicly advertised for bids for the principal phases of the project. Bidding closed in late November, and the complaints in the instant case were filed on December 7, 1978, a few days before the Hospital District was to execute the construction contract.

### Procedural History of the Case

Simultaneously with the filing of the complaints, both federal and private plaintiffs filed applications for a temporary restraining order, and motions for a preliminary injunction to halt construction on certain portions of the new hospital. On that same date, private plaintiffs filed a motion to consolidate the two causes of action pursuant to Rule 42(a), Fed.R.Civ.P. Since the cases involve common questions of law and fact, and consolidation of the actions would promote judicial efficiency, and avoid unnecessary costs and delay, the motion to consolidate was granted. On the day the

complaints were filed, a hearing was held on the plaintiffs' applications for a temporary restraining order, and at that time, defendants agreed to withhold execution of the construction contract until a hearing could be held on the motion for a preliminary injunction. On December 15, 1978, the defendants were relieved from their obligation to withhold execution of the contract, in return for their agreement not to assert any related legal or equitable defense.

Defendant's motions to dismiss were denied without prejudice, with the exception of one of the private plaintiffs' claims against the defendant state agencies. The state agencies' motion to dismiss on the ground that the Eleventh Amendment bars a suit against the state under 42 U.S.C. § 1983 was granted. However, the motion to dismiss the § 1983 claims against the Commissioners of the Texas Health Facilities Commission and the Chairman of the Texas Department of Health, in their official capacities, was overruled. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

On January 22, 1979, private plaintiffs filed a motion for class action certification, contending that all requirements of Rule 23, Fed.R.Civ.P., had been met. However, the motion was denied, since it appeared to the Court that such certification was unnecessary, in that the very nature of the rights plaintiffs sought to vindicate required that the decree run to the benefit of plaintiffs as well as all persons similarly situated. *See Bailey v. Patterson,* 323 F.2d 201, 206 (5th Cir. 1963); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida,* 493 F.2d 799, 812 (5th Cir. 1974); and *Gray v. International Brotherhood of Electrical Workers,* 73 F.R.D. 638 (D.D.C.1977).[1]

At the pretrial hearing held on January 21, 1980, private plaintiffs stated that they had entered into a consent decree as to their cause of action against the state officials. The Court granted plaintiffs' motion to dismiss the state officials, and all due process claims arising under the Fourteenth Amendment. The case then proceeded to a trial before the Court on January 22, 1980, and was concluded on February 11, 1980.

*Findings of Fact and Conclusions of Law*

After considering the testimony of 53 witnesses reflected in a 3363 page transcript, together with the numerous exhibits submitted, and the briefs and arguments of counsel, the Court finds and concludes as follows:

Any evaluation of this case must begin with the basic and unalterable fact that the Bexar County Hospital has been located at its present Oak Hills site for more than eleven years, and that the question involving the original relocation to that site is not in this lawsuit. In addition, it is patently obvious from the evidence that far better facilities and equipment exist at the Bexar County Hospital, than at the Robert B. Green Hospital, thus enabling the Bexar County Hospital to provide at the present time, and for the foreseeable future, a much higher quality of health care than can be found or made available under present circumstances at the Robert B. Green Hospital, unless very substantial sums of money are expended for new construction, renovation of existing buildings, new equipment, additional personnel, maintenance, and operating expenses, a situation that the Hospital District is financially unable to remedy,[2] and the Bexar County Commissioners' Court apparently feels that the taxpayers

---

1. *But see, Johnson v. State of Mississippi,* 78 F.R.D. 37 (N.D.Miss.1977) remanded with instructions to dismiss as moot, 586 F.2d 387 (5th Cir. 1978) and *Fujishima v. Board of Education,* 460 F.2d 1355 (7th Cir. 1972).

2. The federal plaintiff argues that pursuant to 31 C.F.R. § 51.52(b)(5), the Hospital District should be forced to use revenue sharing funds

to improve and maintain inpatient maternity services at the downtown facility. This argument assumes, of course, that the Court would find that the relocation of such services will discriminate against minorities. As will be more fully discussed below, the Court is unwilling to make such a finding.

of the County cannot afford to supply the necessary funds.[3] Based upon the greater weight of the credible evidence, the conclusion is inescapable that to split the available funds between two high level hospitals would seriously restrict and diminish the quality of maternity and infant care at both.

I

*Claims Based on the Fourteenth Amendment*

Private plaintiffs acknowledge that intent to discriminate must be proven to establish a violation of the Equal Protection Clause of the Fourteenth Amendment. Indeed, plaintiffs could not contend otherwise, in view of the rulings of the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). As recognized in those cases and others, intent may be inferred from a variety of factors such as the impact of the official action, the historical background of the decision, the sequence of events, and the procedures used. The evidence in this case demonstrates beyond peradventure that the decisions of the Board of Managers under attack were developed over a period of several years in a series of public meetings, and that such decisions were made in what the Board perceived to be the best interest of the indigent and other patients of the Bexar County Hospital District. These decisions were made while the Hospital District was faced with budgetary deficits and beset with unanticipated obligations to provide health care to out of county residents. The evidence further demonstrates that these public meetings were covered for the most part by the news media, and the issues

discussed received a great deal of local attention. On the basis of the greater weight of the credible evidence, the Court finds that the decision to relocate the inpatient maternity and newborn nursery services was and is supported by substantial medical and governmental considerations, and was made with no intent whatsoever to discriminate against any person because of race, religion, color, sex or national origin.

II

*Federal and State Statutory Claims*

Citing *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), plaintiffs contend that proof of discriminatory effect alone is sufficient to establish a violation of Title VI and the Revenue Sharing Act. Defendants disagree, arguing that the Constitutional standard (e. g., proof of intent) should be applied to all claims asserted by plaintiffs. In support of this argument, defendants cite *Regents of the University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), wherein several Justices of the Supreme Court indicated that they had serious doubts concerning the correctness of the decision in *Lau.* 98 S.Ct. 2733, 2780.

The Court, however, finds that resolution of this issue is unnecessary in the instant case, since the evidence fails to support plaintiffs' allegations of racially discriminatory effect. To be sure, there will probably be some inconvenience encountered by prospective indigent mothers, regardless of race, in arranging for transportation to the new obstetrical and nursery services at Bexar County Hospital, but the tremendous benefits to be derived from the higher quality of medical care will much more than offset and outweigh any of the possible transportation problems created by the move.[4] It is, however, significant to

---

3. The Commissioners' Court has steadfastly refused to increase to the maximum authorized by law either the assessed valuation of property in the hospital district, or the tax rate to be applied.

4. In addition, the plaintiffs' claims of inaccessibility and lack of transportation alternatives are discounted by evidence that an overwhelm-

ing majority of all patients arriving at the Robert B. Green Hospital did so by private automobile. While it is true that many of the families living in close proximity to the Green Hospital are of Mexican ancestry, the fact remains that the relocation will enable the Hospital District to provide maximum health care for *all* indigents in the county.

note that the Hospital District is cognizant of the situation, and has taken steps to alleviate any problems by providing service by mini-bus, in addition to the new Metropolitan bus system, and by its own emergency ambulance service, in addition to the Emergency Medical Service, which is operated efficiently and successfully by the San Antonio Fire Department.

At this point it is pertinent to note that after the relocation the Robert B. Green will remain open as an outpatient facility providing emergency obstetrical and nursery services; a prenatal clinic to supplement those already being operated in the Southeast and Southwest quadrants of the County by the Bexar County Hospital District, the Metropolitan Health District, and others, will be provided there; and meeting rooms for prospective mothers and their families to receive information and instruction from time to time, in order that they will be better able to anticipate and cope with problems that could arise during and after their pregnancies, will also be provided.

In the meantime, comprehensive plans to provide information and education to prospective mothers are due to begin 8 to 9 months prior to the move. In this connection, it is appropriate to note that after having closely observed the demeanor of the private plaintiffs, and their ability to respond to questions while testifying, this court cannot and does not subscribe to the hints or suggestions that they, or those similarly situated to them, do not possess the intelligence or judgment needed to understand and follow instructions. When it is made clear to them that the best medical care possible in a full service hospital, equipped to handle known and unanticipated complications, will be available to them and their newborn babies, the evidence, together with the Court's observations, fully support the conclusion that they will have both the ability and good judgment to act in their own best interest as well as that of their babies.

In conclusion the Court finds that not only was no discrimination intended by the Hospital District, but none was effected. On the contrary, when the relocation is completed, a first class general hospital will be provided at the Oak Hills site, without discrimination, to every qualified obstetrical patient, so that optimum health care will be made available to each indigent mother and her newborn child.

■ Assuming and holding that this Court has jurisdiction; that the plaintiffs have standing to sue; that laches is not a viable defense; that private plaintiffs did not have to first resort to administrative remedies; and that the relocation of obstetrical and nursery services is a program or activity funded in whole or in part by Revenue Sharing Funds, the Court is, nevertheless, of the firm opinion, and so finds, that the defendants have satisfied all legally mandated requirements for notice; that the relocation plan was not made with the intent or purpose to discriminate against the plaintiffs; that said relocation plan is supported by substantial medical and governmental considerations; that plaintiffs will suffer no injuries in fact by the planned relocation; and that the relief sought by plaintiffs would violate the interests of infants born in the hospital facilities, as well as the public interest.

The Court further concludes, therefore, that the law and the facts are with the defendants and against the plaintiffs; that the Bexar County Hospital District had the right to lawfully change the site from which it provides public services, because the decision to relocate was not made with a discriminatory intent or purpose, especially since the relocation will not have a discriminatory effect; and that the nature and scope of injunctive relief sought by the plaintiffs is not justifiable under the law and evidence in this case. It is, accordingly,

ORDERED, ADJUDGED and DECREED as follows:

(1) The injunctive relief prayed for by the federal plaintiff will be, and the same is hereby, DENIED.

(2) The injunctive and other relief prayed for by the private plaintiffs, including the City of San Antonio, will be, and the same is hereby, DENIED.

This Court is unwilling to characterize this litigation as frivolous, or as having been instituted in bad faith. Actually, it should serve a useful purpose in ventilating the areas of disagreement and bringing about a fuller understanding of the numerous and diverse elements which formed the basis for the relocation decision.

As indicated in this Court's order of February 11, 1980, the findings and conclusions therein set forth are incorporated in this opinion, and, together with any other findings and conclusions herein contained, shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52, Fed.R.Civ.P.