Madeline JOHNSON, etc., et al.,
Plaintiffs-Appellants,

v.

The CITY OF OPELOUSAS, etc., et al.,
Defendants-Appellees.

No. 80–3411.

United States Court of Appeals,
Fifth Circuit.*

Unit A

Oct. 13, 1981.

Henry C. Remm, Jr., Acadiana Legal Service Corp., Lafayette, La., for plaintiffs-appellants.

Richard B. Millspaugh, City Atty., Opelousas, La., for defendants-appellees.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves an action by a mother and her son to challenge the constitutionality of the nocturnal juvenile curfew ordinance of the City of Opelousas, Louisiana. The district court upheld, with a minor exception, the constitutionality of the ordinance. *See Johnson v. City of Opelousas,* 488 F.Supp. 433 (W.D.La.1980). We reverse.

I. Facts

On August 16, 1978, appellant Madeline Johnson's son, James Johnson, then fourteen years old, was arrested at 2:05 a.m. by a police officer of the City of Opelousas under Opelousas Code § 18–8.1 (1972),[1] the nocturnal juvenile curfew ordinance of Opelousas. James Johnson subsequently was found to be in violation of the ordinance as a result of this incident. He was first placed on probation, then was placed in a private juvenile residential facility, and eventually was released and allowed to live at home with his mother in Opelousas. No appeal was taken from this adjudication.

Appellants, Madeline Johnson, on the behalf of herself, her then minor son, James Johnson, and all other minors similarly situated, and James Johnson, suing by his mother as his next friend, then brought this action in the United States District Court for the Western District of Louisiana pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Opelousas' juvenile curfew ordinance on several grounds. The defendants are the City of Opelousas, Thomas Edwards, Mayor of Opelousas, and Howard Zerangue, Police Chief of Opelousas.

Appellants sought to maintain the suit as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, the class being "all persons who have been or in the future will be arrested or detained under § 18–8.1." Although it expressly found that all of the requirements of Rule 23(a) and (b)(2), Fed.R.Civ.P., had been satisfied, the district court nevertheless denied class status to appellants. The court reasoned that a class action was "unnecessary" because "any declaratory or injunctive relief to the named plaintiffs would inure to the benefit of other similarly situated minors." 488 F.Supp. at 435–36.

On April 16, 1980, the district court upheld the constitutionality of the curfew ordinance, with one minor exception.[2] The court entered a final judgment dismissing the action on the merits.

Appellants now appeal from this judgment. They initially claim that the district

---

1. Opelousas Code § 18–8.1 provides as follows:
 (a) It shall be unlawful for any unemancipated minor under the age of seventeen (17) years to travel, loiter, wander, stroll, or play in or upon or traverse any public streets, highways, roads, alleys, parks, places of amusements and entertainment, places and buildings, vacant lots or other unsupervised places in the City of Opelousas, Louisiana, between the hours of 11:00 p.m. on any Sunday, Monday, Tuesday, Wednesday or Thursday night and 4:00 a.m. of the following day, or 1:00 a.m. on any Friday or Saturday night and 4:00 a.m. of the following day, all official time of the City of Opelousas, Louisiana, unless the said minor is accompanied by his parents, tutor or other responsible adult or unless the said minor is upon an emergency errand.

 (b) Any minor violating any of the provisions of this section shall be deemed a neglected child, as such term is defined in Louisiana Revised Statutes, Title 13, Sections 1569 and 1570, as now enacted or hereafter amended or reenacted and such minor and his parents, tutor or other adult having the care and custody of such minor shall be dealt with under proper procedure in any juvenile court having jurisdiction of such child. (Ord. No. 3, §§ 1, 2, 6–14–72)

2. The district court held that the portion in subsection (b) of the ordinance which provides that a violator would be deemed a "neglected child" is unconstitutionally vague and must be deleted in the application of that subsection. 488 F.Supp. at 441–44.

court abused its discretion in denying class certification. As to the merits of their suit, they assert, as they did below, a broad challenge to the constitutionality of the curfew ordinance under the United States Constitution specifically urging that the ordinance: (1) is unconstitutionally vague and overbroad on its face, in violation of the due process clause of the Fourteenth Amendment; (2) violates the minor appellant's rights of freedom of speech, freedom of association, freedom of assembly, and freedom of religion under the First and Fourteenth Amendments; (3) violates the minor's substantive due process rights under the Fourteenth Amendment to move freely and to use the public streets in a way that does not interfere with the personal liberties of others; (4) violates the constitutional rights of parents under the Fourteenth Amendment to direct the upbringing of their children and the constitutional guarantee of family autonomy; (5) violates the minor appellant's constitutional rights of interstate and intrastate travel guaranteed by the commerce clause of Article 1, Section 8 and the privileges and immunities clauses of the Fourteenth Amendment and Article 4, Section 2; and (5) violates the equal protection clause of the Fourteenth Amendment.

## II. Mootness

■ An inevitable event subsequent to the district court's decision in this case raises a mootness issue with respect to the claims of appellant James Johnson. On February 5, 1981, James Johnson, a minor at the time this suit was brought and decided below, turned seventeen years of age. As a result, the Opelousas nocturnal juvenile curfew ordinance no longer applies to him. Since James Johnson now no longer is threatened by the prohibitions of the ordinance or the consequences of its violation, all issues on this appeal concerning his constitutional rights possibly are moot.

Appellant James Johnson seeks to avoid this mootness problem by claiming that he continues to possess a personal stake in the outcome of this suit. The personal stake he asserts is his desire to use a favorable judgment from this Court to attack collaterally his prior adjudication and delete his juvenile court record. With a favorable judgment here, he also hopes to eliminate any damage to his reputation and educational and employment opportunities caused by his juvenile court adjudication.

Appellant's alleged continuing personal stake is inadequate under federal law to avoid a determination of mootness. His claimed personal stake in this suit is based on the possible collateral consequences to him from his juvenile court adjudication. These potential collateral consequences are of a social nature. He is faced with the established law that only possible collateral *legal* consequences may maintain one's personal interest in such an adjudication after the juvenile court's remedial order has been completed. "[A] criminal case is moot only if it is shown that there is no possibility that any collateral *legal* consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968) (emphasis added); *see also Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). Although *Sibron* and *Carafas* involved adult criminal convictions, their rule regarding mootness is equally applicable to juvenile court adjudications.

Accordingly, James Johnson was required to assert a potential penalty or disability imposed under either state or federal law as a result of his juvenile court adjudication. He has failed to meet this challenge. Indeed, Louisiana law specifically prohibits the imposition of such collateral consequences on a child adjudged to be a "neglected child," within the meaning of La. Rev.Stat.Ann. §§ 13:1569, 13:1570 (West 1968), in a Louisiana juvenile court.[3]

---

3. La.Rev.Stat.Ann. § 13:1580(4) (West 1968), provides, in pertinent part:

No adjudication by the court upon the status of any child shall operate to impose any

of the civil disabilities ordinarily resulting from conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed

Therefore, the personal claims of appellant James Johnson are now moot, and we are without jurisdiction to address them. We note, however, that his mother, appellant Madeline Johnson, as the mother of five other children younger than James Johnson who remain subject to the curfew ordinance, continues to possess a personal stake in this controversy.

### III. Class Action

■ Despite the mootness of appellant James Johnson's claims on the merits of this appeal, James Johnson still may appeal the district court's denial of class certification. In *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the Supreme Court held:

an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a "personal stake" in obtaining class certification sufficient to assure that Art. III values are not undermined. If the appeal results in reversal of the class certification denial, and a class subsequently is properly certified, the merits of the class claim then may be adjudicated pursuant to the holding in [*Sosna v. Iowa*, 419 U.S. 393 [95 S.Ct. 553, 42 L.Ed.2d 532] (1975)].

*Id.* 100 S.Ct. at 1212.[4] Since the class certification issue remains live and James Johnson is a proper representative for raising it on appeal, we turn now to that procedural question.

As noted earlier, the district court found that all of the requirements of Rule 23(a) and (b)(2), Fed.R.Civ.P., had been satisfied by appellants, but nevertheless denied class certification on its belief that a class action was "unnecessary" since any relief obtained by appellants would inure to the benefit of all similarly situated minors.

■ A district court's decision whether a class action may be maintained should stand absent an abuse of discretion. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir. 1975). After reviewing the relevant law on class actions and considering the circumstances of this case, we find, however, that the district court abused its discretion in denying class certification because it failed to consider the risk of mootness in this litigation.

There is a division of authority on whether a trial judge properly may deny certification to an otherwise eligible class solely because of "lack of need"—*i. e.*, because all potential class members will benefit automatically from any relief granted to the named plaintiff.[5] We need not reach that

a conviction. The disposition of a child or any evidence given in the court shall not operate to disqualify the child in any future civil service application or appointment.

Moreover, under Louisiana law, juvenile court adjudications may not be used in subsequent court proceedings against the juvenile, as either a party or a witness. *State v. Roberts*, 331 So.2d 11 (La.1976), *rev'd and remanded in part on other grounds*, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977).

4. In *Geraghty*, the Court explained its holding as follows:

We merely hold that when a District Court erroneously denies a procedural motion, which, if correctly decided, would have prevented the action from becoming moot, an appeal lies from the denial and the corrected ruling "relates back" to the date of the original denial.

100 S.Ct. at 1213 n.11.

5. Some courts consider the class device superfluous when the plaintiff has challenged a stat-

ute as facially unconstitutional. As one district judge voiced the complaint, "It makes me wonder why the complexities of Federal Rule of Procedure 23 are entered into when the declaration of unconstitutionality for one would, or at least should, in effect proclaim unconstitutionality for all ...." *Bond v. Dentzer*, 325 F.Supp. 1343, 1352 (N.D.N.Y.1971). In *Ihrke v. Northern States Power Co.*, 459 F.2d 566 (8th Cir. 1972), *vacated on other grounds*, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972), the court reasoned that "[t]he determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action. No useful purpose would be served by permitting this case to proceed as a class action." 459 F.2d at 572. Other circuits have followed the *Ihrke* approach. *See James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979); *Craft v. Memphis Light, Gas and Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976); *Carter v. Butz*, 479 F.2d 1084, 1089 (3d

issue in this case because we believe that the substantial risk of mootness presented by the facts of this dispute was sufficient to create a need for certification. When the court below entered its judgment, Johnson was sixteen years of age. Having been denied certification as a class representative (a position from which he could pursue the interests of the class despite any subsequent mooting of his personal claim, *see Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)), he had only ten months to complete successfully his judicial course past one and conceivably two appellate hurdles. Given the inevitable lapse of time in appellate review, it was likely from the start that Johnson would turn seventeen before obtaining any relief that could "inure to the benefit of others similarly situated," *Johnson, supra*, 488 F.Supp. at 436. Indeed, those most needful of relief from an invalid juvenile curfew—adolescents in their mid-teens—would always run some risk of mootness during a protracted challenge to the ordinance.

Certification of a class under Rule 23(b)(2) is "especially appropriate where, as here, the claims of the members of the class may become moot as the case progresses." *Adams v. Califano*, 474 F.Supp. 974, 979 (D.Maryland 1979), *aff'd* sub nom. *Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981). Since "[t]he risk of mootness is great in this litigation and the issue raised is important not only to [appellant], but others similarly situated," *Hoehle v. Likins*, 538 F.2d 229, 231 (8th Cir. 1976), we hold that the trial court abused its discretion in refusing to certify an otherwise appropriate class because of "lack of need," and we reverse the denial of class status.

Since the district court explicitly has determined that appellants' suit satisfies the prerequisites of Rule 23(a) and (b)(2), it would be a waste of time and judicial resources to remand this case to the district court simply to have it certify the requested class. Accordingly, we certify the class of "all persons who have been or in the future will be arrested or detained under § 18–8.1 of the Opelousas Code." *See Vergara v. Hampton*, 581 F.2d 1281 at 1283–84; *cf. Locke v. Board of Public Instruction*, 499 F.2d 359, 365 (5th Cir. 1974).

 Our finding that a live controversy continues to exist through the class and appellant Madeline Johnson does not, however, automatically establish that the named appellants are entitled to continue litigating the interests of the class. *United States Parole Commission v. Geraghty*, 445 U.S. at 405, 100 S.Ct. at 1214. We must determine whether the named representatives of the class "will fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a); *Geraghty*, 100 S.Ct. at 1214. The court below expressly found James Johnson and his mother to have been proper representatives at the time it declined to certify the class. 488 F.Supp. at 435 n.1. Had the district court certified the class, James Johnson unquestionably would still be a suitable representative, despite the present mootness of his personal claim. *Sosna v. Iowa*, 419 U.S. at 401, 95 S.Ct. at 558. Since our correction of the district court's ruling on certification "relates back"

---

Cir. 1973); *Martinez v. Richardson*, 472 F.2d 1121, 1127 (10th Cir. 1973).

The Seventh Circuit, by contrast, has held that "[i]f the prerequisites and conditions of Fed.R.Civ.P. 23 are met, a court may not deny class status because there is no 'need' for it." *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972). *See also Brown v. Scott*, 602 F.2d 791, 795 (7th Cir. 1979), *aff'd* sub nom. *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); 1 Newberg, Class Actions § 1010.1 m (1977).

This Court has not confronted the question directly. In *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 812 (5th Cir. 1974), however, we found it unnecessary to decide whether the trial court had abused its discretion in refusing to certify a 23(b)(2) class: "[W]hether or not appellants are entitled to class action treatment, the decree to which they are entitled is the same. . . . [T]he very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of the named plaintiffs, but also for all persons similarly situated." *Compare United States v. Bexar County*, 484 F.Supp. 855, 858 (W.D.Tex.1980) (citing *Delray Beach*) *with In Re Alien Children Educ. Litigation*, 501 F.Supp. 544, 553 n. 11 (S.D.Tex. 1980) (citing *Fujishima*).

to the time of that ruling,[6] we find that James Johnson remains a proper representative of the class.

Having reversed the class certification denial, certified the class, and found appellants to be proper class representatives, we need not return the case to the district court before we address the merits of appellants' constitutional claim. Although the district court did not consider the case as a class action, its refusal to certify the class for "lack of need" implicitly recognized that the questions presented for judicial determination would remain the same whether the case proceeded as a personal or as a class action. James Johnson made a facial attack on the constitutionality of the ordinance, raising no factual dispute concerning the particular circumstances of his arrest and conviction. He and his mother could and did raise all pertinent issues, and further factual development in the court is not necessary to avoid prejudice to the class. In sum, this is a purely legal dispute arising from stipulated facts, 434 F.Supp. at 434, and we proceed to the merits of the Johnsons' challenge.

## IV. Overbreadth

We turn to appellants' contention that the Opelousas juvenile curfew ordinance is unconstitutionally overbroad. The ordinance prohibits unemancipated minors under seventeen years of age from being on the public streets or in a public place between 11:00 p. m. and 4:00 a. m., Sunday through Thursday, and 1:00 a. m. and 4:00 a. m., Friday and Saturday. The only exceptions to this prohibition arise when the minor is accompanied by a parent or "responsible adult," or is upon an "emergency errand." [7]

6. See note 4, supra.

7. See note 1, supra.

8. In *Aladdin's Castle*, this court struck down as overbroad a municipal ordinance that barred operators of "pinball" parlors from allowing minors under seventeen to play the machines unless accompanied by a parent or guardian. We found this restriction on the fundamental associational rights of minors constitutionally infirm since it neither promoted "a sufficiently

Although juvenile curfew ordinances are fairly common, only three federal cases to our knowledge have considered the constitutionality of such ordinances. *See Naprstek v. City of Norwich*, 545 F.2d 815 (2d Cir. 1976); *McCollester v. City of Keene*, 514 F.Supp. 1046 (D.N.H.1981); *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242 (M.D.Penn.1975), aff'd mem., 535 F.2d 1245 (3d Cir.), cert. denied, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976). None of the ordinances involved in these cases, however, encompassed nearly the breadth of the Opelousas ordinances. A review of the Opelousas juvenile curfew ordinance and pertinent legal authority convinces us that this curfew ordinance is constitutionally infirm in its breadth.

■ "A law is void on its face for overbreadth if it 'does not aim specifically at evils within the allowable area of [government] control but, . . . sweeps within its ambit other activities that in ordinary circumstances constitute an exercise' of protected expressive or associational rights." *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d 1029, 1038 n.13 (5th Cir. 1980), prob. juris. noted, —— U.S. ——, 101 S.Ct. 2312, 68 L.Ed.2d 838 (1981) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940); see also *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).[8] Even though the government has a legitimate and substantial purpose behind the legislation, that purpose cannot be sought by means that "broadly stifle fundamental personal liberties" when "less drastic means for achieving the same basic purpose" are available. *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); accord, *United States v. Robel*, 389 U.S. 258, 268

important interest [nor] employ[ed] means closely drawn to avoid unnecessary abridgement of associational freedoms." 630 F.2d at 1041 (quoting *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976)). The ordinance at issue here targets the same age group, but casts a much broader net over the associational rights of minors by seeking to keep them off the streets altogether during certain hours.

n.20, 88 S.Ct. 419, 426, 19 L.Ed.2d 508 (1967); *Hobbs v. Thompson,* 448 F.2d 456, 460 (5th Cir. 1971). A state statute should not be found to be overbroad, however, unless "it is not readily subject to a narrowing construction by the state courts," *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975) and its deterrent effect on legitimate first amendment activity is both real and substantial. *Id.* (citing *Broaderick v. Oklahoma,* 413 U.S. 601, 612–15, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973)).

■■ The Opelousas curfew ordinance is directed at nighttime activities of minors rather than adults. Minors are "persons" under the United States Constitution, and have fundamental rights which the state must respect. *Tinker v. Des Moines Independent Com. Sch. Dist.,* 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969). Although the totality of the relationship between the juvenile and the state is undefined, it is clear that minors as well as adults are protected by the Bill of Rights and the Fourteenth Amendment. *In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967); *accord, Planned Parenthood v. Danforth,* 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). Minors "are entitled to a significant measure of First Amendment protection . . .," *Erznoznik v. City of Jacksonville,* 422 U.S. at 212–13, 95 S.Ct. at 2274 (citing *Tinker v. Des Moines Independent Community School District, supra*), even though their First Amendment rights are not coextensive with those of adults. *Id.* 422 U.S. at 214 n.11, 95 S.Ct. at 2275. The First Amendment rights of minors include freedom of speech, *Tinker v. Des Moines Independent Community School District, supra,* and freedom of religion. *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). To some degree, these rights undoubtedly also entail the right to associate freely, which, like the right of adults, *see Sawyer v. Sandstrom,* 615 F.2d 311, 316 (5th Cir. 1980), is not limited to political associations but includes associations for social, legal, or economic purposes.

■ Moreover, the right of "all citizens" to be free to travel within and between the states uninhibited by statutes or regulations which unreasonably burden this movement, *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600 (1969); *United States v. Guest,* 383 U.S. 745, 757–59, 86 S.Ct. 1170, 1177–78, 16 L.Ed.2d 239 (1966), certainly extends in some measure to juveniles, as citizens of the United States.

■ It is clear that these rights of minors in Opelousas currently are being burdened by that city's juvenile curfew ordinance. The curfew ordinance prohibits unemancipated minors generally from being on public streets between certain hours without their parents, with exception for minors on "emergency errands." We express no opinion on validity of curfew ordinances narrowly drawn to accomplish proper social objectives. *See, e. g., Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242 (M.D. Penn.1975), *aff'd mem.,* 535 F.2d 1235 (3d Cir.), *cert. denied,* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976). But, under this curfew ordinance minors are prohibited from attending associational activities such as religious or school meetings, organized dances, and theater and sporting events, when reasonable and direct travel to or from these activities has to be made during the curfew period. The same inhibition prohibits parents from urging and consenting to such protected associational activity by their minor children. The curfew ordinance also prohibits a minor during the curfew period from, for example, being on the sidewalk in front of his house, engaging in legitimate employment, or traveling through Opelousas even on an interstate trip. These implicit prohibitions of the curfew ordinance overtly and manifestly infringe upon the constitutional rights of minors in Opelousas.

We are aware, of course, that in some situations the state may have the power to place regulations upon the conduct of minors that would be unconstitutional if placed upon the conduct of adults. "[T]he power of the state to control the conduct of

children reaches beyond the scope of its authority over adults. . . ." *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 170, 64 S.Ct. 438, 444, 88 L.Ed. 645 (1944). Restrictions on minors that would be constitutionally invalid if applied to adults may be justified only if the restrictions serve a " 'significant state interest . . . that is not present in the case of an adult.' " *Carey v. Population Services International*, 431 U.S. 678, 693, 97 S.Ct. 2010, 2020, 52 L.Ed.2d 675 (1977) (quoting *Planned Parenthood v. Danforth*, 428 U.S. 52, 75, 96 S.Ct. 2831, 2844, 49 L.Ed.2d 788 (1976)); *see also Ginsberg v. New York*, 390 U.S. 629, 638–41, 88 S.Ct. 1274, 1279–81, 20 L.Ed.2d 195 (1968).

In *Bellotti v. Baird*, 443 U.S. 622, 633–39, 99 S.Ct. 3035, 3043–46, 61 L.Ed.2d 797 (1979), four of the eight Justices joining in the majority holding set out three reasons explaining why some situations justify the placement of restraints on minors which would be unconstitutional if placed on adults: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child-rearing." *Id.* at 634, 99 S.Ct. at 3043. In *Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d at 1043, this Court said that "[t]hese reasons may be viewed as threshold criteria." If the statute, regulation, or ordinance under question is based on any of these factors, "we would be required to determine the strength of the support provided, its relation to the [enactment] as a whole, and the extent, if any, to which it might serve to justify any special restraints on the . . . rights of minors." *Id.* Noting that "[n]either the Supreme Court nor this circuit has set forth the appropriate standards under which such an inquiry would be conducted," *id.*, we found it unnecessary in *Aladdin's Castle* to engage in such analysis, due to the inapplicability of any of the factors in that case. *Id.*

We need not conduct such an inquiry in this case either, since none of the three factors, while possibly relevant to a general curfew mandate,[9] apply to the overly broad restrictions with which we are concerned. First, there is no issue of *peculiar* vulnerability of children with respect to their attending or traveling to or from a religious, school, commercial, or other bona fide organized activity during nighttime. Similarly, no issue of peculiar vulnerability of children is presented by a minor's being on the sidewalk in front of his house at night, engaging in legitimate nighttime employment, or traveling through Opelousas at night. These activities do not involve a minor's special vulnerability to the extent which justifies differing juvenile criminal proceedings, *see e. g., In re Gault; McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1978), or special control of obscene materials, *see Ginsberg v. New York*, both of which have been held to warrant distinguishing the rights of minors from those of adults. Instead, the activities we describe are, in terms of juvenile vulnerability, more like a minor's patronizing a coin-operated amusement center, an activity which we found in *Aladdin's Castle* to present no substantial issue regarding the special vulnerability of children. 630 F.2d at 1043.

Second, the associational, employment, and travel activities with which we are concerned and which are prohibited by the Opelousas curfew ordinance do not involve any "critical decisions" on the part of minors. It would be anomalous to permit minors to express their views on divisive public issues, *Tinker v. Des Moines Independent Community School District*, and to obtain abortions without parental consent, *Bellotti v. Baird; Planned Parenthood v. Danforth*, but to deny them the right to decide, within the bounds of parental judgment, whether or not to engage in the above activities which at present are proscribed by the curfew ordinance.

Finally, to the extent that it prohibits minors from engaging in these activities,

---

9. Opelousas' asserted purposes underlying the curfew ordinance are to protect youths from nighttime dangers, reduce nocturnal juvenile crime, and enforce parental control and responsibility for their children.

the curfew ordinance inhibits rather than promotes the parental role in child-rearing, the third listed justification for greater restrictions on the rights of minors. While Opelousas may have legitimate concern over minors being on the streets at night in general, a point on which we express no opinion here, its interest in whether juveniles engage in these specific nighttime activities is not sufficient to justify the removal of the decision as to these activities from the childrens' parents. "[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Commonwealth of Massachusetts*, 321 U.S. at 166, 64 S.Ct. at 442; *see also Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d at 1043.

Hence, Opelousas has no "significant...interest...that is not present in the case of an adult," *Carey v. Population Services International*, 431 U.S. at 693, 97 S.Ct. at 2020, which would justify the prohibition its curfew ordinance places on the specific activities of minors we have described. Therefore, this curfew ordinance, however valid might be a narrowly drawn curfew to protect society's valid interests, sweeps within its ambit a number of innocent activities which are constitutionally protected. The stifling effect upon these legitimate activities is overt and is both real and substantial. Regardless of the legitimacy of Opelousas' stated purposes of protecting youths, reducing nocturnal juvenile crime, and promoting parental control over their children, less drastic means are available for achieving these goals. Since the absence of exceptions in the curfew ordinance precludes a narrowing construction, we are compelled to rule that the ordinance is constitutionally overbroad. We accordingly reverse the district court's holding to the contrary.

Our holding is expressly limited to the unconstitutional overbreadth of the ordinance. Because we reverse on this ground, and since at oral argument appellants

waived their general challenge to the constitutional authority of Opelousas to enact a properly drafted nocturnal juvenile curfew ordinance, it is unnecessary for us to address the merits of appellants' other attacks on the ordinance.

REVERSED.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.